Henry House v. Houston Waterworks Company.

No. 38.

1. Houston City Waterworks—Liability.

The Houston City Waterworks Company, operating under a contract with the city, is not liable at suit of a property owner of the city for damages from fire, on the ground that the water company had not kept its water pressure up to its contract gauge ........................................... 238

2. Same.

The City of Houston by its charter had power to provide a system of water works for extinguishing fires, etc., and to maintain a fire department. The city authorities contracted with parties, who were subsequently incorporated as the Houston Waterworks Company. The company obligated itself to construct and maintain a first-class system of waterworks, and to keep up a sufficient pressure, etc. The petitioner, House, sued for damages from destruction of a lumber yard in the city by fire, alleging that the loss was caused from an insufficient water supply. *Held:*

    1. As a general rule, no person can sue upon a contract except he be a party to the contract, or in privity with it. ............................. 238

    2. Nor can House maintain an action in tort for breach of such contract growing out of the failure of the waterworks company to keep up its pressure of water as its contract with the city required. Such action can arise only in favor of one who is a party to the contract, or in whose favor the contract was avowedly made. ................................................. 240

    3. Nor is the waterworks company liable from having assumed a public duty, for negligent failure to perform which a person injured may maintain an action. ................................................................. 241

3. Liability from Neglect of Duty.

Where a statute enacts or prohibits a thing for the benefit of a person, he has a remedy under the statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to said law. And any one undertaking a public duty is liable for its negligent performance to a sufferer from such negligence ..................................... 241–246

4. Same.

By the contract its object is stated to be, "in order to supply the city of Houston with water," and the uses for which it is to be applied, "to maintain the cleanliness and health of the city, for extinguishing fires, and for the protection of property of the inhabitants of said city," etc. Besides these general provisions, the contract provides for a supply of water to private

consumers at given rates. Neither these nor any other parts of the contract justify the conclusion that the waterworks company should assume any duty to the citizens in the performance of the contract .................. 247

5. Same.

If the city had been operating its own waterworks, and had failed to supply water, as did the defendant, and the same consequences had resulted to plaintiff, it would not have been liable for the property burned. And we think that the defendant, acting under a contract in performance of the duty imposed upon the city by law, could not be charged with greater responsibility than the law imposed upon the city itself.................. 248

ERROR to Court of Civil Appeals for First District, in an appeal from Harris County.

The opinion gives a full statement.

O. T. Holt and A. T. Patrick, for plaintiff in error.—1. It was within the charter powers of both the city of Houston and the defendant, the Houston Waterworks Company, to enter into such a contract, whereby the defendant, the Houston Waterworks Company, assumed, and the city of Houston imposed, the public duties as alleged in the petition. Sayles' Civ. Stats., arts. 629, 630, 3128, sec. 6; Brenham v. Water Co., 67 Texas, 542.

Excerpts from the special laws of the Fourteenth Legislature, chapter 3, entitled "An act to consolidate in one act and amend the several acts incorporating the city of Houston, in Harris County," approved January 23, 1874, pages 4–22:

"Section 49. That this act shall be deemed a public act, and judicial notice shall be taken thereof in all courts."

"Section 4. That the administration of the business affairs of said corporation shall be conducted by a mayor and board of aldermen, who shall compose the city council."

"Section 24. That the city council shall have power and authority to maintain the cleanliness of the city, to secure the safety and convenience of passing in the streets, sidewalks, and other public places in the city; to fix the squaring and to prevent encroachments and obstructions on the streets and sidewalks, squares, ways, levees, and public roads and places; to determine the dimensions, and provide for grading, completing, maintaining, and repairing of streets and pavements at the expense of the owners of adjacent lands; * * * to provide means for the protection of property and extinguishment of conflagrations, and for the regulation, maintenance, and support of a fire department; * * * and generally to make and establish all rules, regulations, by-laws, and ordinances which may contribute to and promote the better administration of the affairs of said city, as well as for the maintenance of the peace, tranquillity, and safety of said city, and for the protection of persons and property of its inhabitants."

Special laws of the Sixteenth Legislature, chapter 21, entitled "An act amendatory of and supplemental to an act entitled 'An act to con-

solidate in one act and amend the several acts incorporating the city of Houston, in Harris County,' approved January 23, 1874, and the several acts amendatory thereof."

In addition to the foregoing excerpts, which are re-enacted, this act provides:

"Section 23.   *   *   *   Also, that the city council may provide, own, and maintain waterworks for the use of the city and its inhabitants."

These charter powers have been continuously in force since enactment, and are now in force.

The Houston Waterworks Company and the city of Houston have from year to year ratified said contract, the hydrant rent has been paid, and the contract in all respects complied with by the city.

2. While, as a general rule, the parties to a contract are the only persons affected by it, and strangers can not sue thereon, yet the rule is just as general, that where the principal object of the contract between the promisor and promisee is the benefit of a third person, he may sue for a breach which results in injury to his person or estate. Tel. Co. v. Adams, 75 Texas, 531; 3 Am. and Eng. Encyc. of Law, 863, note 5, and cases cited; 1 Pars. on Con., 7 ed., *497, 498, and cases cited in notes x and y; Lumber Co. v. Water Supply Co., 12 S. W. Rep., 554; Duncan v. Water Co., 12 S. W. Rep., 557.

3. A corporation organized for the purpose of supplying water to a municipal corporation and the inhabitants thereof, is a quasi-public corporation, having all the attributes of a technically private corporation, with certain duties and liabilities to the public superadded. 1 Dill. Mun. Corp., 4 ed., sec. 52, note 1, citing Foster v. Fowler, 60 Pa. St., 27; 2 Beach on Corp., sec. 388, and cases cited; Id., sec. 834c, and cases cited.

4. Torts may and frequently do occur, independently of any contract; but they may also be founded upon or grow out of some violation of a right created or secured by contract. 1 Wait's Act. and Def., 4.

5. Privity of contract is not essential to support an action ex delicto for the breach of a public duty, even though the duty be primarily founded upon a contract, to the consideration of which the plaintiff is a stranger. 1 Wait's Act. and Def., 136, citing Marshal v. Railway, 11 C. B., 655; Longmeid v. Holliday, 6 Exch., 767; Nolton v. Railway, 15 N. Y., 44; Carroll v. Railway, 58 N. Y., 126, 134, and cases cited.

6. "It may be laid down as a general rule, that whenever the aid of the government is granted to a private company in the form of a monopoly, or a donation of public property or funds, or a delegation of the power of eminent domain (or a use of public streets), the grant is subject to the implied condition that the company shall assume an obligation to fulfill the public purpose on account of which the grant was made;" and for a failure of duty in this respect, to the injury of

any individual interested in its performance, an action lies in his behalf. 2 Mora. on Priv. Corp., secs, 1114, 1129, and cases cited; 1 Wait's Act. and Def., 133; Couling v. Coxe, 6 C. B., 703; Ewer v. Jones, 6 Mod., 27; Braithwaits v. Skinner, 5 Mee. and W., 327; Mayor of Lyme Regis v. Henley, 1 Bing. N. C., 222.

7. "Persons or corporations that voluntarily assume and undertake the performance of a work, even though it be quasi-public in its character, ought to be held to impliedly contract that they will exercise due care in the performance, and for a neglect in this respect, should be liable for the resulting damage." When a municipal (or private) corporation or an individual undertakes duties toward the public involving the exercise of public powers and rights, the law imposes the duty of faithfully exercising them, and gives an action for misfeasance or neglect in this respect to any person who may be injured by such failure of duty. City of Galveston v. Posnainsky, 62 Texas, 118, 125, 126; and cases cited; Campbell v. Waterworks, 26 L. T., 475; Atkinson v. Waterworks Co., L. R., 6 Exch., 404; Couch v. Steele, 3 El. and Bl., 402; Rowning v. Goodchild, 2 W. Bl., 906; 13 Am. and Eng. Corp. Cases, 484.

8. The rule is general, that where the duty imposed by statute or ordinance is manifestly intended for the protection and benefit of individuals, or a class of individuals, the common law, when such individual is injured by a breach of the duty, will supply a remedy, if the statute gives none, unless the statute itself enforces the duty by a penalty recoverable by the party aggrieved (as distinguished from a common informer), and although the statute may impose a penalty in the nature of a public fine. Railway v. Terry, 42 Texas, 451; Railway v. Wilson, 60 Texas, 142; Railway v. Murphy, 46 Texas, 356; Railway v. Gray, 65 Texas, 32; Railway v. Williams, 70 Texas, 159; Cool. on Torts, 658, and cases cited; City of Galveston v. Posnainsky, 62 Texas, 118; Moak's Underhill on Torts, p. 18, rule 5; Shearm. & Redf. on Neg., sec. 31; 3 Laws. Rights, Rem., and Pr., secs. 1182, 1183; Robinson v. Chamberlain, 34 N. Y., 389; Willey v. Mulledy, 78 N. Y., 310.

9. An ordinance passed by the city council of a municipal corporation, in pursuance of the power derived from the Legislature, imposing the performance of a public duty upon a person subject to such control, creates an imperative and absolute statutory duty, as much so as if the act specifically imposing such statutory public duty had been enacted by the Legislature itself. 1 Dill. Mun. Corp., sec. 308, and note; Id., sec. 393, and note, citing Hayes v. Railway, 111 U. S., 228; Village of Carthage v. Frederick, 122 N. Y., 268.

10. "What kind of damage can be more a proximate consequence of the want of water than destruction by fire of a house which a proper supply of water would have saved? It is the immediate consequence of the proximate cause." Buffalo B. S. C. Co. v. Milby & Dow, 63 Texas, 492; Jones v. George, 61 Texas, 346; Atkinson v. Waterworks Co., L. R., 6 Exch., 404; Casting Co. v. Railway, 109 Mass., 277; Lum-

ber Co. v. Water Supply Co., 29 Am. and Eng. Corp. Cases, 387; 12 S. W. Rep., 554; Hadley v. Baxendale, L. R., 9 Exch., 341.

Cases contra were then reviewed by counsel.

*Hutchinson, Carrington & Sears,* for defendant in error.—1. The only obligation upon appellee to supply the necessary amount of water to extinguish fires, or for any other purpose, is founded upon the contract between appellee and the municipal government, known as "the mayor, aldermen, and inhabitants of the city of Houston," to which contract appellant was not a party, and can not therefore recover for any damage which may have been visited on him by the failure of the appellee to comply with the contract, to which appellant was a stranger.   Taylor v. Dunn, 80 Texas, 652; Fowler v. Waterworks Co., 24 Am. and Eng. Corp. Cases, 627; 83 Ga., 219; Becker v. Waterworks Co., 79 Iowa, 44; Jones v. George, 61 Texas, 364; Foster v. Waterworks Co., 3 Lea (Tenn.), 42; Nicholson v. Bridgeport, 46 Conn., 24; Darton v. Waterworks Co., 54 Iowa, 59; Ferris v. Waterworks Co., 16 Nev., 44.

2.   The contention of appellant, that appellee has neglected a public and statutory duty, is not well founded in fact, or in any allegation of his petition, as there is no law, State or municipal, which imposes upon appellee any duty to furnish to a municipal government of Houston, or to its private citizens, any amount or volume of water, and the sole obligation so to do rests on a private contract with the city of Houston, and appellee is neither a public officer nor a derelict in any duty imposed by statutory or common law, and therefore appellants have no right to recover.   Fowler v. Waterworks Co., 83 Ga., 219; Foster v. Waterworks Co., 3 Lea, 42; Atkinson v. Waterworks Co., L. R., 2 Ex. Div., 441; Taylor v. Dunn, 16 S. W. Rep., 738; Howsmon v. Water Co., 24 S. W. Rep., 784.

BROWN, ASSOCIATE JUSTICE.—The city of Houston was incorporated by a Special Act of the Legislature, which contained the following provisions: "Section 24.   That the city council shall have power and authority  *  *  *  to provide means for the protection of property and extinguishment of conflagrations, and for the regulation and maintenance of a fire department."   In the year 1878 the city, by its mayor, entered into a contract in writing with James M. Loweree and associates, by which the latter agreed and bound themselves to construct in the city of Houston a first-class system of waterworks, and to furnish the city with water for the purpose of extinguishing fires and other purposes.   Loweree and associates, after making the contract, procured a charter from the State of Texas, being incorporated as the Houston Waterworks Company, and under that charter the defendant constructed waterworks in the city of Houston, and furnished water to the city under the terms of the contract made with Loweree and associates, receiving pay therefor in accordance with the terms of that contract.

Plaintiffs in error sued defendant in error in the District Court of Harris County, alleging that they, at and before the date of the fire, were citizens of the city of Houston, and that they owned a lumber yard in the said city; that a fire originated in a lumber yard near to that which belonged to plaintiffs in error, which fire was communicated to the lumber yard and property of plaintiffs. It was alleged, that the city of Houston had a well equipped and efficient fire department, which arrived at the scene of the fire in due time, and could and would have arrested its progress, and would have prevented the destruction of plaintiffs' property, if there had been in the pipes and mains a sufficient supply of water, with a proper pressure, such as defendant had contracted with the city of Houston to furnish; that defendant negligently failed to furnish water in the pipes as it agreed to do; that there was not sufficient pressure to throw water to the height specified in the contract, and that by reason of such negligence the plaintiffs' property was destroyed by the said fire.

The District Court sustained a demurrer to the petition, and plaintiffs declining to amend, the cause was dismissed, from which judgment plaintiffs appealed to the Court of Civil Appeals, which affirmed the judgment of the District Court.

This action is based solely upon the alleged failure of the Waterworks Company to comply with the following clause of the contract made by Loweree and associates with the city of Houston:

"6. To guarantee that the said waterworks shall be of the most durable character and material, and first class in all respects, and capable of supplying three million (3,000,000) gallons per day, for twenty-four hours; also with a sufficient pressure to raise the water to all parts of the highest building of said city; and shall maintain said supply of water in the pipes at all times, except it be in case of accident, or to repair the said works, in which case such time as may be necessary shall be allowed for repairs; and that said works shall be capable at any time in case of fire of throwing six streams of water at one time one hundred (100) feet high through fifty (50) feet of hose, of two and one-half inch hose, and one and one-eighth inch nozzle."

Three questions of law arise upon the allegations of the petition, which are material to the determination of this case:

1. Can the plaintiffs recover, against the defendant, upon the contract made with the city of Houston?

2. If plaintiffs can not maintain an action against defendant upon the contract, can they maintain an action, as for tort, for the failure to comply with the contract?

3. Did the defendant, by its contract with the city of Houston, undertake the performance of a public duty, and for failure to comply, become liable to plaintiffs for damages for their losses?

As a general rule, no person can sue upon a contract except he be a party to or in privity with it. Many cases based upon contracts practically the same as the one now in suit, under almost identically the

same circumstances, have been decided by the courts of different States of the United States, and almost unanimously these courts have held, that a citizen of a municipal corporation can not recover from a water company for a failure to perform such a contract made with such municipal corporation. Ferris v. Waterworks Co., 16 Nev., 44; Foster v. Waterworks Co., 3 Lea (Tenn.), 42; Nickerson v. Hydraulic Co., 46 Conn., 24; Fowler v. Waterworks Co., 83 Ga., 219; Davis v. Waterworks Co., 54 Iowa, 59; Becker v. Waterworks Co., 79 Iowa, 419; Britton v. Waterworks, 38 Am. and Eng. Corp. Cases, 412; Eaton v. Water Co., 56 N. W. Rep., 201; Mott v. Water Co., 28 Pac. Rep., 989; Beck v. Water Co., 11 Atl. Rep., 300; Howsmon v. Water Co., 24 S. W. Rep., 784. It is claimed, however, that the city of Houston represented its inhabitants in making the contract, and that it was made for their benefit, which gives a right of action to any citizen who may suffer injury by its breach. The city of Houston did represent its citizens in making the contract, just as such governments represent the people in every official act, but in no other sense. It is true that plaintiffs in error might have received benefit from the performance of the contract by the defendant, but "it is not every promise made from one to another, from the performance of which a benefit may inure to a third, which will give a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefitted." Simson v. Brown, 68 N. Y., 355; Burton v. Larkin, 36 Kan., 246; Wright v. Terry, 23 Fla., 169.

In support of the right of the plaintiffs to recover on the contract made between Loweree and associates and the city of Houston, counsel cite Western Union Telegraph Company v. Adams, 75 Texas, 531; Aitkinson v. Newcastle Waterworks Company, 6 Exchequer, 402; Paducah Lumber Company v. Paducah Water Supply Company, 12 Southwestern Reporter, 554, and Duncan v. Owensboro Waterworks Company, Id., 557.

The first cited case, Western Union Telegraph Company v. Adams, was a suit for a failure to deliver the following telegram: "Waco, October 12, 1887.—F. E. Adams, Athens: Clara, come quick; Rufe is dying. O. M. Simmons." The party addressed was the husband of Clara, who was the sister of Rufe. Mrs. Adams was mentioned in the message, it was sent for her benefit alone, and the court held that she came within the rule quoted above, and could recover for its breach.

In this case, the contract does not embrace the plaintiffs either by name or by mentioning a class to which they belong; it was not made for the purpose of benefitting them, or a class to which they belong. The object and purpose of making the contract was to keep water in the mains which the city might apply to use in the public fountains, by flushing the gutters, or in extinguishing fires in case a conflagration should occur. If a fire occurred, and if plaintiffs' property should be involved, and if the fire company should arrive in time, they might be

benefitted by the performance of the contract. Such benefit would be incidental, however, not flowing immediately from the performance of the contract. So the injury resulting from a failure on the part of the water company would not be proximate, but remote, as a cause.

An Act of Parliament required the Newcastle Water Company to keep its mains and pipes filled with water, with a pressure sufficient to throw water to a stated height, which was sufficient to extinguish fires in the buildings of the town, and each citizen was authorized to take water at all times to extinguish fires. In Atkinson v. Newcastle Water Company, plaintiff alleged a failure to keep the water in the pipes with the required pressure, whereby plaintiff was unable to extinguish a fire which occurred in his premises, and the property was destroyed. The court held the company liable to the plaintiff in the value of the property destroyed. On appeal, the judgment was reversed, and while the reversal was put on another ground, the court criticised and virtually overruled the opinion upon this point. Law Reports, 2 Exchequer Division, 441.

The case under consideration does not come within the principles which governed in that case. No statute enjoined upon the Houston Waterworks Company to keep water in the mains, and the citizens of Houston had no right to use the water to extinguish fires. The city, by its fire company, could alone use the water for that purpose.

In Paducah Lumber Company v. Paducah Water Company, the right of the property owner to recover of the water company upon a contract made with the municipal corporation, very much like the one under consideration and under very similar circumstances, was the question directly involved. The court held that the property owner could sue upon the contract. Duncan v. Owensboro Water Company was decided by the same court (the Supreme Court of Kentucky) upon the authority of the former case. No authority is cited by the court to sustain the decisions, and no reference is made to the many cases which hold to the contrary. The reasoning in the cases is not such as to induce us to follow them, in opposition to the otherwise unanimous decisions of the American courts.

It is claimed for the plaintiffs, that if they can not maintain an action upon the contract as such, they can sue as in tort for the breach of that contract growing out of the failure of the waterworks company to comply with the sixth article of the contract between Loweree and associates with the city of Houston. One who has a right of action upon a contract may sometimes sue either on the contract as such, or in tort for the breach of it. But the right of a person not privy to the contract rests upon a different rule.

The correct rule of law as to the right of a party to sue as in tort for the breach of a contract is thus well expressed in Shearman & Redfield on Negligence, section 116: "Negligence which consists merely in the breach of a contract will not afford a ground of action by any one who is not a party to the contract, nor a person for whose benefit

the contract was avowedly made.  \* \* \*  The true question always is, has the defendant committed a breach of duty apart from the contract? If he has only committed a breach of the contract, he is liable only to those with whom he has contracted, but if he has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another." This rule is well supported by authority. Cool. on Torts, p. 104, and note 1, same page; Moak's Underhill on Torts, p. 23, rule 7; p. 24, rule 8; p. 25, sub rule.

The plaintiffs are not party to nor in privity with the contract; it was not made expressly for their benefit; the defendant has not been guilty of any breach of duty that it owed the plaintiffs apart from the contract, nor of a duty growing out of any relations between them, created by or arising out of the contract, and it is clear that plaintiffs can not maintain the action ex delicto for the breach of the contract itself.

It is urged by plaintiffs' attorneys, with great earnestness, that by the contract between Loweree and associates with the city of Houston, adopted by defendant, the defendant undertook the performance of a public duty, for the negligent failure to perform which, any person injured may maintain an action. The rules of law upon this subject are well settled, and are clearly stated in the following quotations:

"Whenever a statute creates a right or duty or an obligation, then, although it has not in express terms given a remedy, the remedy which by law is properly applicable to that right or obligation, follows as an incident. \* \* \* In every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to said law." Addison on Torts, 6 ed., 75.

"It is well settled, that a public officer or other person who takes upon himself a public employment, is liable to third persons in an action on the case for any injury occasioned by his own personal negligence or default in the discharge of his duties." Sawyer v. Corse, 17 Gratt. (Va.), 238.

It is not true, that for every failure to perform a public duty an action will lie in favor of any person who may suffer injury by reason of such failure. If the duty is purely a public duty, then the individual will have no right of action; but it must appear that the object and purpose of imposing the duty was to confer a benefit upon the individuals composing the public. In the case of Taylor v. Railway, 45 Michigan, 77, plaintiff sought to recover from defendant damages for an injury alleged to have been received by falling upon the snow and ice on the sidewalk in front of defendant's property, in the city of Monroe. The charter of the city gave it full control of the streets and sidewalks, and empowered the city to require of adjacent property owners to remove snow and ice from sidewalks in front of their property, making such owners liable for all damages that the city might be

compelled to pay by reason of the failure of such owner to so remove the obstruction. The question was the liability of the property owner to those who might pass along the sidewalk. Judge Cooley, delivering the opinion of the court, said:

"To maintain this proposition, it is necessary to make it appear that the duty imposed was a duty to individuals rather than a duty to the whole public of the city; for if it was only a public duty, it can not be pretended that a private action can be maintained for a breach thereof. A breach of public duty must be punished in some form of public prosecution, and not by way of individual recovery of damages. Nevertheless, the burdens that individuals are required to bear for the public protection or benefit may in part be imposed for the benefit or protection of some particular individual, or class of individuals also, and then there may be an individual right of action as well as a public prosecution, if a breach of the duty causes individual injury.

"The nature of the duty and the benefits to be accomplished through its performance must generally determine whether it is a duty to the public in part or exclusively, or whether individuals may claim that it is a duty imposed wholly or in part for their special benefit."

The case of Taylor v. Railway, cited above, is strongly analogous to the case under consideration, in that the duty of keeping the sidewalks free from ice and snow was imposed upon the city by its charter, with power to impose it upon property owners. By ordinance, it was imposed upon the property owner under penalties prescribed. The court held, that the obligation of the property owner was to the general public, that is, to the city, and not to the individuals who might travel over the sidewalk. In this case, the law authorized the city of Houston to provide the means of extinguishing conflagrations, under which the city might have built its own waterworks, or secured water to be furnished under contract. Upon the principle that prevailed in the case last cited, the obligation or duty of the *defendant* was to the city, and not to the individual citizen.

Looking to the "nature of the duty and the benefits to be accomplished through its performance" under this contract, it seems to be strictly within the above case, a duty under a contract to be performed to the city (the corporation), not to the citizen, and is not therefore such a duty as will give a right of action, by a failure of performance, to individuals who may be injured thereby.

An examination of the authorities relied upon by plaintiffs in error will show that they are not applicable to this case.

In the case of Sawyer v. Corse, 17 Grattan, 230, Sawyer had entered into a contract with the Postmaster-General of the United States to carry the mail from Washington, D. C., to Alexandria, Va., by which he bound himself to safely carry and deliver all packages delivered to him under the contract. One Fleming was the agent of Sawyer to carry the mail. He received from the postmaster at Washington a package deposited in that office by Corse, containing $988, directed to Alex-

andria, which Fleming negligently lost. The court held Sawyer liable, as having undertaken the performance of a public duty. The duty of safely carrying was enjoined by public statute and specially undertaken by the contract. Packages were to be carried for any person who might deliver them to the postoffice. It was a public duty, because it was prescribed by statute for all persons contracting to carry the mail. It was assumed by Sawyer when he became by contract one of the class of persons upon whom the statute placed the duty. Sawyer was a bailee of the property of Corse, and under obligation as such, independent of his contract with the United States government to safely carry and deliver, just as in case of a public carrier which upon a contract with one person agrees to carry another; the carrier is under an obligation independent of the contract to carry safely the person with whom it had no contract.

In this case, no statute prescribed that which defendant contracted to do. It had no property of plaintiffs in its possession, and had not contracted to do anything for them. There was neither contract relations with plaintiffs nor obligation to them arising out of its relations to them under the contract with the city. The difference between the facts of that case and this is so manifest, that it does not require argument to show that the same principles do not apply.

Robertson v. Chamberlain, 34 New York, 389, and Insurance Company v. Baldwin, 37 New York, 648, are cited as authority. In these cases the defendants, under the statute of that State, had contracted to keep certain sections of public canals in good condition, and failing to do so, obstructions occurred in the canal, by which the plaintiffs, in travelling upon it, suffered injury from its unsafe condition. The court held, that the canal was a public highway, and that defendants, having entered into a contract to keep it in good condition, were liable, as the highway commission would have been, and that the obstruction in the canal was a public nuisance, for which defendants were liable. The statute authorized the letting of the contract.

Nowell v. Wright, 3 Allen (Massachusetts), 166, was a case in which the defendant was appointed, under a statute of that State, keeper of a drawbridge over a navigable stream. His duties were defined by law. He failed to close the draw of the bridge, whereby plaintiff's wife, in attempting to pass over the bridge, fell and was injured. Upon the same principle as in the preceding cases, the court held defendant liable, because the bridge was a part of the public highway.

In each of the three preceding cases last cited, the public had a right to use the highway, and the object of the contract or undertaking was specifically to keep the highway in a condition safe for all who might use it. The contract was made and the duty enjoined especially for the benefit of the public, a class of individuals who might use it.

No such relation existed between defendant and plaintiffs in this case. The defendant did not agree to do any act for the individual inhabitants, nor had they the right to use the water furnished by the

defendant to the city. The cases are not similar, and can not be determined by the same rules of law.

Counsel also cite Henley v. Mayor and Burgesses of Lyme, 15 English Common Law Reports, 486, in support of plaintiffs' right to recover for the failure to perform a public duty. But an examination of the case will show that it rests upon principles not applicable to this case. The King of England, by letters patent, granted to "the mayor and burgesses of Lyme Regis (aforesaid) and their successors, the borough or town of Lyme Regis, and also all that building called the pier, quay, or cob of Lyme Regis; with all and singular the liberties, privileges, profits, franchises, and immunities to the same town, or to the same pier, quay, or cob in anywise howsoever belonging or appertaining; * * * and did direct that the aforesaid mayor and burgesses of the borough of Lyme, and their successors, all and singular the buildings, banks, seashores, and all other mounds and ditches within the aforesaid borough of Lyme, or to the aforesaid borough in anywise belonging or appertaining, or situate between the same borough and the sea, and also the said building there called the pier, quay, or cob, at their own cost and expense thenceforth from time to time forever, should well and sufficiently repair, maintain, and support as often as it should be necessary or expedient." The city failed to maintain the walls, and the water from the sea came in and damaged the houses of the plaintiff. The court held the defendants liable, putting it upon the principle that a public officer is liable for a failure to discharge a public duty whereby a citizen is injured. It will be seen that certain revenues were granted to defendants, and the court held, that they were not given for their private advantage, but to enable them to discharge the duties imposed. This was in effect a charter, and contained the provision quoted as a duty imposed. The case is similar to that class of cases in this country wherein it is held, that a municipal corporation to which is granted control over the public streets, and which is empowered to levy taxes for their maintenance, will be held liable for a failure to perform the duty.

In the case last cited the duty was prescribed in the grant, and was manifestly commanded to be done for the benefit of all the property owners along the sea frontage. It comes within the rule, as we before said, that is applied in this country to municipal corporations. There is no similarity between that case and this, and it is not authority to support the claim of the plaintiff.

Let us suppose that the town of Lyme had made a contract with A to build the wall and keep it in repair, and had made a contract with B to furnish it (the town) the stone, cement, and other material necessary to perform the work, B knowing the use to which the material furnished was to be put, and that B failed to furnish the material, whereby A was prevented from constructing or maintaining the wall, through which failure the water rushed in and destroyed the plaintiff's property. Would it be contended that plaintiff could maintain an

action against B? Certainly no such claim would be made. B would in that case occupy the same relation to the property owners of Lyme that defendant sustains under this contract to the property owners of Houston—being obligated to furnish to the city the means with which to discharge its duty to the public.

The case before the court is more analogous to Winterbottom v. Wright, 10 Meeson and Welsby, 109, and Marvin Safe Company v. Ward, 17 Vroom, 19 (New Jersey Law). In the former case, the defendant had contracted with the Postmaster-General of England to keep in good repair a coach for the purpose of carrying the mail. He failed to keep the coach in safe condition; the driver was injured by reason of defects in the coach, and sued for damages. Lord Abinger said: "It is, however, contended, that this contract being made on behalf of the public by the Postmaster-General, no action could be maintained against him, and therefore the plaintiff must have a remedy against the defendant. But that is by no means a necessary consequence; he may be remediless altogether. There is no privity of contract between these parties, and if the plaintiff can sue, every passenger, or even any person passing along the road who was injured by the upsetting of the coach, might bring a similar action. * * * Where a party becomes responsible to the public by undertaking a public duty, he is liable, though the injury may have arisen from the negligence of his servants or agents. So in case of a public nuisance; whether the act was done by the party as a servant or in any other capacity, you are liable to an action at the suit of any person who suffers. These are cases, however, where the real ground of liability is the public duty, or the commission of a public nuisance."

In the same case, Rolfe, B., said: "The duty, therefore, is shown to have arisen from the contract, and the fallacy consists in the use of that word 'duty.' If duty to the Postmaster-General be intended, that is true; but if a duty to the plaintiff be intended (and in that sense the word is evidently used), there was none. This is one of the cases in which there certainly has been damnum; but it is damnum absque injuria. It is no doubt a hardship on the plaintiff to be without a remedy, but by that consideration we ought not to be influenced. Hard cases, it has been frequently observed, are apt to introduce bad law."

Marvin Safe Company v. Ward was a suit against the defendant for failing to comply with a contract made with the boards of chosen freeholders of two counties in New Jersey for the construction of a temporary bridge over a river. It was claimed that the bridge was defectively built, from which cause the plaintiff suffered injury. The court held that plaintiff could not recover upon the contract, and discussing the view that the defendant was discharging a public duty. the court said: "Such contract creates the ordinary relation of employer and employe. It does not put off from the board of chosen freeholders the duty and responsibility which the statute fixes upon them, nor does

it create any duty or liability on the part of the other contracting party, except such as arises inter se from the terms of the contract."

In each of the two cases last referred to the contract was made by public officials representing the public, just as did the city in this case. In each of the cases the contract was made to furnish that which would be used for public purposes, as in this case it was intended that the water should be used for a public purpose by the city of Houston. In the case of Marvin Safe Company v. Ward, supra, the court said: "Nor will the fact that the defendant's contract related to a structure for public use alter the position of the case." Nor will the fact that the city of Houston intended to use the water furnished for the purpose of extinguishing fires alter the position of the parties in this case, and convert a private into a public contract. It is not claimed that there is any statute which imposed upon the water company the duty of furnishing water to the city of Houston or its citizens. If the defendant by its contract undertook to perform a public duty, it must be ascertained from the terms of the contract, or be an obligation which the law attaches to the making of such a contract.

We must determine the character of the undertaking of the water company from the terms of the contract which Loweree and associates made with the city of Houston. The purpose and intent of the water company in making the contract is expressed in the following language: "That said James M. Loweree and associates, parties of the first part, in order to supply the city of Houston with water to maintain the cleanliness and health of the city, for extinguishing fires, and for the protection of property of the inhabitants of said city, using the waters of Buffalo Bayou above tide water, do hereby agree and contract," etc.

The language, "in order to supply the city of Houston with water," etc., expresses the object of the water company in making the contract; while the words, "to maintain the cleanliness and health of the city, for the extinguishment of fires," etc., state the uses to which the city intended to apply the water.

This contract proceeds to provide for the erection of a system of waterworks in the city of Houston, specifying how such works should be constructed, the laying of pipes and mains in the streets, and placing hydrants at designated points, or such as should be designated by the city. It provides, that a reservoir of given capacity shall be built, in which water shall be maintained at a height sufficient to throw water to a given height. The city is to be furnished water for the use of the public at two places, and for flushing the gutters of the streets where gutters are laid. In fact, it specifies with great particularity what is to be done for the city, and the manner in which it shall be done. It also binds the contractors to erect and maintain a system of fire alarm, evidently to render the provision for fire protection more effective. The defendant agrees to put the water in the mains, and the city can use it for the fountains, to flush gutters, or to extinguish fires, as its necessities may demand.

This contract contains the following provision:

"8.   To supply water to private consumers at a rate not to exceed five (5) cents per one hundred (100) gallons used, and if meters are used, the private consumer to pay rent of meter; it being understood, that the private consumer is to pay for the costs of tapping the main conductor and for service pipe to and through his premises; and it being further understood, that private consumers are to have the privilege of using said water, paying therefor as aforesaid, without being required to use any given quantity."

Distinctly an agreement is here expressed to do certain things for the citizen.   The terms of the contract itself thus show, that in so far as the acts to be done were to be done directly for the citizen, it was expressed.   If there had been any doubt as to the intention of the parties in the other parts of the contract, it seems that this last clause would remove the doubt by showing explicitly in what particular the citizen was to be directly benefitted.   There is no part of the contract which will justify the conclusion that the water company or the city contemplated that the water company should assume any duty to the citizens in the performance of this contract.   Neither party intended that the water company should be obligated to the citizen; then how is it to be arrived at that such an obligation exists?

It is no answer to quote the well established rule, that a person or corporation that undertakes the performance of a public duty is liable to any person injured thereby for a negligent failure to perform that duty.   It must first be established that the duty is to the individual, before the rule is applicable.   It is claimed, that a public character is given to the duty to be performed by the water company, from the fact that the city in making the contract acted for the public and for the benefit of its citizens.   It is true that the city acted for the public, just as every city does in every act it performs, and each citizen was in a sense interested and to be benefitted, just as from the performance of any work for the city.   But no citizen had such an interest as would give him a right of action for its breach, unless it was a public duty. In the case of Nickerson v. Hydraulic Company, cited above, the court, in deciding a question similar to this, said:   "The most that can be said is, that the defendant was under obligations to the city to supply the hydrants with water.   The city owed a public duty to the plaintiffs to extinguish their fire.   The hydrants were not supplied with water, and so the city was unable to perform its duty.   We think it is clear that there was no contract relations between the plaintiffs and the defendants, and consequently no duty which can be the basis of a legal claim."

The relations of parties to this suit, and their legal rights, could not be more accurately or clearly expressed than by the quotation of this language.

Some company or person sold to the city of Houston hose for the purpose of throwing water upon any building that might be on fire,

and at the time knew that the hose was to be used for that purpose. In some cities engines are used to apply the water, instead of the pressure from the waterworks, in which case both hose and engine would be used. Suppose that in this instance the water pressure had been sufficient, but the hose from defect in its construction had burst, so that the water could not be applied; or if an engine had been used, suppose that from defective construction it had failed to perform its functions, and by either of these causes the property had been destroyed. Would it be contended that the company or person furnishing hose or engine would be liable to the property owner for the loss of his property? We think that such a claim could not be maintained, indeed would not be made; yet the principle is the same. In buying the hose and engine the city would be acting for the inhabitants of the city, with the purpose of applying them to the use of the city in discharging the duty of extinguishing the fire, for the protection of the citizen, and the company selling either hose or engine would know as fully the uses to which it was to be applied as did defendant. The consequences of a failure to comply with a contract to furnish suitable hose or engine would be the same as the failure to furnish sufficient water and pressure. There can be no difference in the principle applicable to the cases supposed and the one before the court.

The city of Houston might have constructed and operated its own waterworks, in which event it would have performed that part of its duty to the public which in this case it delegated to the defendant. If the city had been operating its own waterworks and had failed to supply water, as did the defendant, and the same consequences had resulted to plaintiffs, it would not have been liable for the property burned. 2 Dill., sec. 975; Wright v. City of Augusta, 83 Ga., 241; Van Horn v. City of Des Moines, 63 Iowa, 447; Hayes v. City of Oshkosh, 33 Wis., 314. If the city would not be liable for a failure to perform the same duty, we think that the defendant, acting under a contract in the performance of the duty imposed upon the city by law, could not be charged with greater responsibility than the law imposed upon the city itself. Mott v. Water and Mfg Co., 28 Pac. Rep., 989.

If the city of Houston had contracted with the defendant that it was to be liable to individual citizens for losses sustained by fires under such circumstances as are shown in this case, such contract would have been void, because the city had no power to make such contract. Taylor v. Dunn, 80 Texas, 670; Becker v. Waterworks, 79 Iowa, 422. It being true that the city could not have made a contract with the defendant that it should be so liable, it follows that no such implied liability could arise out of the contract, for assuredly nothing could be implied which could not have been lawfully expressed in the contract.

There is no error in the judgment of the District Court and Court of Civil Appeals, and the judgments are affirmed.

*Affirmed.*

Delivered May 13, 1895.