**HERIDER FARMS–EL PASO, INC. and Roy Herider, Individually, Appellants,**

v.

**John B. CRISWELL and R. C. West, a/k/a Raymond C. West, Appellees.**

No. 6408.

Court of Civil Appeals of Texas, El Paso.

Feb. 5, 1975.

Rehearing Denied March 5, 1975.

Scott, Hulse, Marshall & Feuille, James L. Gallagher, Robert W. Baker, El Paso, for appellants.

Kemp, Smith, White, Duncan & Hammond, William Duncan, El Paso, for appellees.

## OPINION

OSBORN, Justice.

This is a summary judgment case involving a claim by a former employer for damages for an alleged tortious interference with a business relationship and lease agreement by a former employee. After the Appellants-employer sold the entire business involved in this suit to Appellee-employee, this damage suit was filed and Appellees obtained a summary judgment denying all recovery upon the basis that having sold the business with knowledge of Appellee-employee's prior conduct, Appellants had received the full benefit of the contractual bargain and could not seek additional benefits for the damage arising out of the alleged tort. Thus, the issue is presented as to whether the contract of sale, which contains no release of claims, and the subsequent payment under the contract, bars a tort suit. We conclude on the facts in this case that it does not and the summary judgment is reversed and the cause remanded to the trial Court.

In February, 1972, Roy Herider of Center, Texas, owner of all the stock in Herider Farms-El Paso, Inc., was the successful bidder to purchase the El Paso retail poultry and egg outlet of Ralston Purina, which was being managed by John Criswell of El Paso, who was an unsuccessful bidder. After the sale, the corporation retained Criswell as manager of the business and gave him an increase in salary, a stock option and other employee benefits. Criswell was subsequently presented with a written employment contract which contained a covenant not to compete, but he never signed it. On Friday, April 28, 1972, Criswell notified Herider by telephone that he was quitting his job to go into business for himself, but said he would be willing to work for an additional thirty days. Prior to that date Criswell had contacted Mike Dipp, who leased the business premises to Herider, and asked to have the premises leased to himself. Apparently as a result of those efforts, Herider received a written notice from Mr. Dipp's attorney on April 29, 1972, advising that the lease was being terminated. Before giving notice of his intention to quit, Criswell also applied for a loan at a bank for the purpose of financing the purchase of the business from Herider even though Herider had previously indicated he had no desire to sell the business. As support for his loan application, he furnished certain financial documents which reflected the successful nature of Herider's business in El Paso. The financial statement which Criswell submitted to the bank in connection with the loan application was dated April 26, 1972.

Criswell said after giving notice of his intention to quit, he contacted all of Herider's employees in El Paso and asked them to go to work for him, and he made arrangements to rent certain cold storage facilities for the operation of his business and arranged for a truck to make deliveries to customers. Mr. Herider arrived in El Paso on Sunday night, April 30th, and the following morning went to his place of business, only to find one employee on the job. All of the other employees were at the location where Criswell proposed to start his new business. After a telephone call, Criswell came to the Herider business premises. He told Herider at that time that he would buy the inventory and equipment for book value. After some discussion and negotiating, it was or-

ally agreed that Herider would sell the business to Criswell for book value plus $10,000.00. Criswell made arrangements with a banker to obtain the necessary financing, and on May 4, 1972, a contract of sale was signed, under the terms of which Herider sold to Criswell all inventory, vehicles and equipment and good will, licenses, permits and customer lists. As a part of the financing arrangements, R. C. West, who was an employee of a competing poultry business, provided sufficient collateral for the bank loan, and in return received an option to buy one-half of the stock in the new business to be operated by Criswell.

Basically, Herider complains that Criswell brought about the termination of the lease agreement, raided his employees and was prepared to take over all his customers in violation of his fiduciary duties as an employee and manager of the business to exercise loyalty and good faith to his employer. He therefore seeks damages for the tortious interference with his business. Criswell claims that at the time Herider signed the contract of sale, and subsequently received the payment as provided for in the contract, he, Herider, knew that the lease had been terminated, he knew Criswell had hired away all the employees, and he knew Criswell was prepared to begin immediate delivery to all of the company's customers. Thus, he contends that Herider cannot take the benefits of the contract and then subsequently seek additional remuneration through a tort action. Criswell urges that the sale by Herider constitutes a waiver and estoppel to assert any misconduct upon the part of Criswell and that by entering into the sale and accepting payment Herider ratified all of the acts and conduct of Criswell prior to the time of the sale.

■ Many authorities recognize the existence of a cause of action for interference where there is the intentional doing of a harmful act without legal justification or excuse. 45 Am.Jur.2d, Interference, § 1, et seq.; 33 Tex.Jur.2d Interference § 1,

et seq.; Harper and James, The Law of Torts, Vol. 1, ch. VI, Business Torts; Prosser, Torts, 4th Ed., ch. 25, Economic Relations. In Cooper v. Steen, 318 S.W.2d 750 (Tex.Civ.App.—Dallas 1958, no writ), the Court said:

> " 'Any intentional invasion of, or interference with, property, property rights, personal rights, or personal liberties causing injury without just cause or excuse is an actionable tort.' 86 C.J.S. Torts § 40, p. 954; * * *."

■■ In order to make out a cause of action for interference, it must be shown that the conduct was willful and intentional. *Frost National Bank v. Alamo National Bank,* 421 S.W.2d 153 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). And while actual malice need not be shown to recover compensatory damages, a finding of actual malice or fraud is necessary to recover punitive damages. *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969).

■■ Some of the cases seem to recognize that once an employee resigns he no longer owes any duty or allegiance to his former employer and is permitted all the privileges of any competitor in hiring former employees and contacting former customers. *Republic Systems and Programming, Inc. v. Computer Assistance, Inc.,* 322 F.Supp. 619 (D.Conn.1970), affirmed, 440 F.2d 996 (2d Cir. 1971), with a strong dissent by Judge Medina concerning the application of Texas law. And while mere preparation to compete before one resigns is not always sufficient to constitute a breach of fiduciary duty the nature of the preparation is significant and may give rise to a cause of action. *Bancroft-Whitney Corporation v. Glen,* 64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921, 24 A.L.R.3d 795. The Court in *Yost v. Justin Belt Company,* 488 S.W.2d 850 (Tex.Civ.App. —Fort Worth 1972), rev'd on other grounds, 502 S.W.2d 681 (Tex.1973), states the rule in Texas is that even in the absence of a contract a person commits an actionable wrong if he induces the servant

of another to break his contract or employment with another, to such other's damage in order to enter into a new contract for him who induces the breach to his benefit or with the intent to injure the former employer.

■ Criswell as manager of Herider's business in El Paso occupied a position which would give rise to the duties of a fiduciary. 19 C.J.S. Corporations § 761, p. 108; Hayes v. Schweikart's Upholstering Co., 55 Tenn.App. 442, 402 S.W.2d 472 (1965). With regard to such duties, the Court in International Bankers Life Insurance Company v. Holloway, 368 S.W.2d 567 (Tex.1963), said:

> "* * * A corporate fiduciary is under obligation not to usurp corporate opportunities for personal gain, and equity will hold him accountable to the corporation for his profits if he does so. Transactions in which a corporate fiduciary derives personal profit, either in dealing with the corporation or its property, or in matters of corporate interest, are subject to the closest examination and the form of the transaction will give way to the substance of what actually has been brought about. * * *"

In Duane Jones Co. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954), suit was brought to recover damages by an advertising agency against former officers and employees who resigned and went to work for a competing agency and the Court in its opinion stated that such employees were at all· times bound to exercise the utmost good faith and loyalty in the performance of their duties to their corporate employer.

Although there may be some question as to what conduct occurred before Criswell's resignation or notice that he was quitting, and what conduct occurred afterwards, admittedly he interfered with Appellant's lease agreement. Criswell in his deposition said:

> "Q You had already made arrangements while you were still employed by Herider Farms-El Paso, Inc. to lease the premises where that business was operating, hadn't you?
>
> "A That's right."

■ When Criswell went to see Mike Dipp about the lease, R. C. West went with him. West recommended to Criswell the banker who subsequently made the loan for the sale, based upon security furnished by West, all of which resulted in West obtaining an option to own a part of the business to be operated by Criswell. It is the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such. Kinzbach Tool Co. v. Corbett-Wallace Corporation, 138 Tex. 565, 160 S.W.2d 509 (1942).

■ No case has been cited directly on the question of whether or not the contract of sale. and subsequent payment bars the tort claim for damages. We conclude that it does not and would follow the somewhat analogous rule that a party aggrieved by a fraudulent transaction has alternative remedies and may either rescind, or affirm the transaction and recover his damages. Talley v. Nalley, 277 S.W.2d 739 (Tex.Civ.App.—Waco 1955, writ ref'd n.r.e.).

■ We conclude that the defenses relied upon by the Appellees have not been established as a matter of law so as to entitle them to a summary judgment. First, with regard to ratification, the rule is that there can be no ratification of an act which is not done in behalf of,. and does not purport to bind, the person against whom the doctrine of ratification is invoked. 2 Tex.Jur.2d Agency § 86, p. 532. In Lincoln Fire Ins. Co. v. Taylor, 81 S.W.2d 1059 (Tex.Civ.App.—Fort Worth 1935, writ dism'd), the Court noted that ratification can only be effectual between the parties involved when the agent's act is done openly and admittedly for the principal, and not when done for the agent's ex-

pressed benefit or for some third party. The Court then concluded that if the agent's act is a fraud upon the principal, it is incapable of ratification because no principal would confer an authority to practice a fraud upon itself. Without determining that Criswell's conduct constituted fraud upon the Appellants, we do conclude that it has not been established as a matter of law that Appellants authorized the breach of any fiduciary relationship which could have been ratified by the contract of sale. Certainly any tort committed by Criswell was not for the benefit of Herider. Thus, the defense of ratification has not been established as a matter of law.

■ Secondly, we conclude that the Appellees have not established as a matter of law an estoppel by reason of the Appellants' conduct in selling the business and accepting payment therefor. In Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (1961), the Court concluded that a written consent permitting earthen pits upon a landowner's property and accepting payment for such privilege did not estop the landowner from seeking damages arising from the negligence in exercising the right that was granted. We cannot conclude as a matter of law that one who has within a period of three or four days lost his lease, lost his general manager and all employees and is probably about to lose all of his customers consents to the conduct which brought about such losses merely because he concludes that it is economically feasible to make the best deal possible to dispose of what had previously been a going concern. While Herider may not have sold his business under duress, it appears that Criswell had prior to May 1, 1972, laid the necessary ground work to require Herider to accept any offer presented to him.

■ Of course, in order for there to be an estoppel there must exist a false representation or concealment of material facts made with the intention that it should be acted on, and the party to whom it was made must have relied on or acted on it to his prejudice. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In this case, there is no conclusive summary judgment proof that Herider made any false representation or concealment of material facts upon which Criswell relied or acted to his prejudice. In the bill of sale, Herider agreed to sell and transfer all of the inventory and assets of the business to Criswell for a given consideration and that was done. He did not make any false representation with regard to a suit for damages arising out of a tort once the contract was completed. The elements of an estoppel have not been established as a matter of law in this case.

■ Likewise, we conclude that waiver has not been established as a matter of law. There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intention to rely upon such right. Maryland Casualty Company v. Palestine Fashions, Inc., 402 S.W.2d 883 (Tex.1966). Waiver, of course, is a question of intention, and the question of waiver is one of fact for the jury where it is a matter of inference. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855 (1958). In reply to the motion for summary judgment, Herider filed an affidavit in which he stated that prior to such sale Criswell had taken steps that made it virtually impossible for the company to continue to operate in El Paso at that time and that such conduct forced him to sell the assets to Criswell. He recites in said affidavit that at no time did he intend to relinquish or waive any right to bring suit against Criswell for what he considered to be wrongful conduct. The record before us at this time does not establish conclusively an intent to waive a known right.

■ Since the case has not been fully developed in a trial upon the merits, we do not express an opinion upon the merits of the lawsuit other than to conclude that in this summary judgment proceeding where

the burden of proof was upon the defendants as the moving parties to establish a defense as a matter of law, such burden has not been met, the evidence is not conclusive, and the case must be remanded to the trial Court. The Appellants' points of error complaining of the granting of the motion for summary judgment are sustained, the judgment of the trial Court is reversed, and the cause is remanded.