J. A. RODRIGUEZ et al., Appellants,

v.

Mike DIPP, Sr., Appellee.

No. 6557.

Court of Civil Appeals of Texas, El Paso.

Jan. 12, 1977.
Rehearing Denied Feb. 9, 1977.

Gerald B. Shifrin, Pearson, Oden & Caballero, Ray Pearson, El Paso, for appellants.

Calhoun, Morton, Deason & Preslar, Ronald R. Calhoun, El Paso, for appellee.

## OPINION

OSBORN, Justice.

This is a suit for damages by a landowner against the makers of a promissory note in a case in which the landowner subordinated his title to the owner of the note who foreclosed upon default by the makers of such note. The trial Court awarded damages based upon a jury finding as to the market value of the land at the time of foreclosure. We reverse and render.

By a Lease Agreement made on November 16, 1972, Mike Dipp, Sr., the owner of 2.25 acres of land in the City of El Paso, leased such unimproved property to six medical doctors, the Appellants herein, for a term of twenty-five years for purposes of building a medical clinic and commercial building thereon. The lessees were given an option to buy the property during the first ten years of the lease. The lease contained a "Subordination Agreement" whereby lessor agreed to subordinate his interest in the property in favor of the lending institution which provided construction financing for the proposed building. The lease provided in lieu of other remedies that if lessees should default in their lease obligation, the lessor may elect to terminate the lease and obtain possession of the premises, or expend the sum necessary to correct the breach and hold lessees liable for such amount plus interest. While the lease requires lessees to pay monthly rent, taxes, and utilities, there is no provision with regard to their having a contractual obligation to the lessor concerning any obligation lessees undertake in having a building constructed on the leased premises.

On April 5, 1973, the six lessees and the wives of those who were married executed a promissory note for $900,000.00 to The State National Bank of El Paso for purposes of obtaining interim financing to construct a building on the leased premises. At the same time, a deed of trust covering the leased land was executed to secure payment of the note, such mortgage being signed by the makers of the note and Mike Dipp, Sr. When the note became due on December 15, 1973, the interest was paid and the note was renewed and extended to March 15, 1974, with the rate of interest increased to ten percent. Mike Dipp, Sr., did not sign the "Extension Agreement." The note was not paid according to the Extension Agreement, and on July 2, 1974, there was a foreclosure under the deed of trust.

On July 19, 1974, counsel for Mike Dipp, Sr., wrote to the bank, the purchaser at the foreclosure sale, concerning the Extension Agreement which Mr. Dipp had not signed. On July 26, 1974, Mr. Dipp signed a letter, identified in the record as Plaintiff's Exhibit 8, to confirm and agree to the terms of the Extension Agreement. At that time, the bank paid him $40,000.00. In October, when the bank was contracting to sell the property, Mr. Dipp executed a warranty deed without payment of any new consideration. The attorney for the bank testified concerning these events as follows:

"Q  On July the 26th, the time you paid this $40,000 to Dipp, it was when he agreed to give you the warranty deed, isn't that correct?

"A  He agreed to sign the letter that was produced a minute ago and also to give us the deed when we asked for it.

        *    *    *    *    *    *

"Q  The bank paid Mr. Dipp $40,000 for the signature on the original of this document, Plaintiff's Exhibit 8?

"A  That plus the execution of the warranty deed.

"Q The deed wasn't executed for some two months, wasn't it?

"A That's right."

Mr. Dipp testified that he purchased the property covered by the lease in 1971 for approximately $156,000.00. Prior to the foreclosure sale, he received $55,000.00 in lease payments, and with the $40,000.00 from the bank, he actually had about $61,-000.00 in the property. The Lease Agreement called for total rents of $780,000.00 over a period of twenty-five years, and the option to purchase was for $275,000.00. A real estate broker testified that the market value of the land without improvements at the time of foreclosure was $3.00 to $3.50 per square foot, or between $294,000.00 and $343,000.00.

The Court only submitted one issue to the jury, and they found the market value of the land to be $191,000.00, which with pre-judgment interest was the amount of the judgment for Mr. Dipp. The Appellee requested issues as to whether Appellants (1) agreed to pay the loan to the bank; (2) failed to make the payments on the loan to the bank; and (3) whether such failure was the cause of the foreclosure. These issues were refused by the trial Court because they did not raise any controverted fact issue. Appellants present eleven points of error, four of which relate to the action of the trial Court in overruling a motion for a directed verdict. These four points may not be considered. Appellants presented their motion for directed verdict when the Plaintiff rested. After the motion was overruled, Appellants presented their evidence and then rested their case and both sides closed. No further motion was presented to or acted on by the trial Court. Thus, the grounds of the motion for directed verdict were waived, and they cannot be considered. *Horizon Properties Corporation v. Martinez,* 513 S.W.2d 264 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.); *Shoppers World v. Villarreal,* 518 S.W.2d 913 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); 3 McDonald, Texas Civil Practice, Sec. 11.26 (1970).

Appellants contend in Point of Error No. VI that the trial Court erred in overruling their motion for judgment non obstante veredicto because their failure to pay their note at the bank did not constitute a tort and could not form the basis of any liability to Appellee. The Appellee has acknowledged that he waived any theory of recovery in contract and has elected to proceed on a tort theory.

■ The general rule is that a mere breach of a contractual duty does not constitute a tort. 86 C.J.S. Torts § 2; Prosser, Torts, 935 (4th ed. 1971). In *House v. Houston Waterworks Co.,* 88 Tex. 233, 31 S.W. 179 (1895), the Court noted that as a general rule, no person can sue upon a contract, except he may be a party to or in privity with it. In that case, where recovery was sought on a tort theory for breach of a contract to furnish water to the City of Houston, the Court stated the applicable rule as follows:

"* * * One who has a right of action upon a contract may sometimes sue either on the contract as such or in tort for the breach of it. But the right of a person not privy to the contract rests upon a different rule. The correct rule of law as to the right of a party to sue as in tort for the breach of a contract is thus well expressed in Shearman & Redfield on Negligence (section 116): 'Negligence which consists merely in the breach of a contract will not afford a ground of action by any one who is not a party to the contract, nor a person for whose benefit the contract was avowedly made. * * The true question always is, has the defendant committed a breach of duty apart from the contract. If he has only committed a breach of the contract, he is liable only to those with whom he has contracted; but, if he has committed a breach of duty, he is not protected by setting up a contract in respect to the same matter with another. * * *' "

Of course, in this case, Appellants did not breach any contractual duty with Appellee when they defaulted on the note, and the Lease Agreement contained no contractual

obligation to pay the subsequently signed note.

■ In reply to the Appellants' sixth point, Appellee initially contends he is entitled to recover on the theory of conversion. This he cannot do. Conversion is a cause of action related to the wrongful possession of chattels and does not apply to realty. Prosser, Torts, Sec. 15 (4th ed. 1971); 1 Restatement (Second) of Torts, Sec. 222A (1965).

Appellee further contends he is entitled to recover on the theory of interference with contractual relations. He relies upon *Herider Farms-El Paso, Inc. v. Criswell,* 519 S.W.2d 473 (Tex.Civ.App.—El Paso, 1975, writ ref'd n. r. e.), and *Tippett v. Hart,* 497 S.W.2d 606 (Tex.Civ.App.—Amarillo), writ ref'd n. r. e. per curiam, 501 S.W.2d 874 (Tex.1973).

In the *Criswell* case, the defendant, who had a fiduciary relationship with the plaintiff, apparently caused a lease agreement to be terminated and induced employees to change jobs. Strangely enough, the lease which was terminated was with Mike Dipp. In that case, the evidence indicated intentional conduct upon the part of the defendant to cause the lease to be terminated, and so that he might take over the premises for his own business operations. Such conduct was calculated to both injure the plaintiff and benefit the defendant and cause a breach of a fiduciary relationship.

In *Tippett v. Hart,* supra, the trial Court found that the defendant intentionally opened a gate and allowed his cattle to graze on plaintiff's pasture, knowing that such conduct was prohibited by plaintiff's agreement with the Department of Agriculture. This conduct was calculated to both injure the plaintiff and benefit the defendant, and was in violation of a known contractual obligation not to graze livestock.

■ In the present case, the Appellants were unable to pay a note and defaulted. There was no intentional act designed to interfere with any contractual obligation of the Appellee, and certainly, such conduct was not to the Appellants' benefit. Such a breach of contract by Appellants, even if it had been with the Plaintiff, would not give rise to a tort for which Appellee could recover damages. *Bartsas Realty, Inc. v. Nash,* 81 Nev. 325, 402 P.2d 650 (1965). In that case, the Court said:

> "The three theories for relief are 'tortious interference' by the defendants with the oral agreement of the plaintiff and defendants, breach of the oral agreement, and fraud. Of course the first theory, that of tortious interference with the oral agreement is wholly unsound, for the defendants' breach of their own contract with the plaintiff is not a tort. [Cases sited] * * * Accordingly, that theory for relief was properly dismissed. * * * *"

While Appellee could have required indemnity from the Appellants in order to agree to subrogate his title to the construction lien, he did not do so and does not now claim any contractual right of recovery.

■ Recovery under any theory of tort would require a breach of some duty imposed by law. The general rule is well summarized in *Bowman v. Goldsmith Bros. Co.,* 109 N.E.2d 556 (Ohio App. 1952), where the Court stated:

> " * * * when the only relation between the parties is contractual, the liability of one to the other, in an action of tort, must arise out of some positive duty which the law imposes because of the relationship or because of the negligent manner in which some acts which the contract provides for is done; and the mere omission to perform a contract obligation is never a tort unless the omission is also the omission to perform a legal duty. In other words, an action of tort for negligence cannot be maintained unless the defendant's conduct constituted the breach of a duty imposed by law, apart from it being a breach of an obligation created by agreement of the parties, either express or implied."

The same general rule is stated very simply in *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E.2d 551 (1951), where the Court said:

" * * * An omission to perform a contract obligation is never a tort, however, unless that omission is also the omission of a legal duty. * * * "

■ Clearly, failure to pay a note when due does not constitute the breach of such a legal duty as will give rise to a tort, and such a failure to pay is not negligence upon the part of the maker of the note. In *Tuttle v. George H. Gilbert Manuf'g Co.,* 145 Mass. 169, 13 N.E. 465 (1887), the Court said:

" * * * The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. Otherwise the failure to meet a note or any other promise to pay money, would sustain a suit in tort for negligence, and thus the promisor be made liable for all the consequential damages arising from such failure. As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract."

That rule was followed in *Pitts v. Southwestern Sales Corporation,* 179 Okl. 274, 65 P.2d 184 (1936); *Cooper v. Roose,* 151 Ohio St. 316, 85 N.E.2d 545 (1949). Also see *Uzarski v. Union Nat. Bank, Carnegie,* 152 Pa.Super. 433, 33 A.2d 459 (1943), where the Court noted that " * * * ordinarily the mere refusal to pay money due under a contract does not amount to a tort." Certainly, the issue of negligence raises a question of duty, and in every instance, before negligence can be predicated on a given act, back of the act must be sought and found a duty to the individual complaining. *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928); 59 A.L.R. 1253; *Rosenbaum v. Branster Realty Corporation,* 276 App.Div. 167, 93 N.Y.S.2d 209 (1949); *Shubitz v. Consolidated Edison Company of New York,* 59 Misc.2d 732, 301 N.Y.S.2d 926 (1969). Even if the execution of a note should be held to raise a duty in favor of one who has subrogated his title, it would make no difference in this case because

counsel for the Appellants has readily acknowledged during oral argument that negligence was not established as a matter of law, and since no issues were requested on such a theory of recovery, negligence could not form the basis of any judgment against these Appellants.

We conclude that the Appellee did not establish as a matter of law a cause of action for interference with a contractual relationship. Since no special issues were submitted to the jury to establish a cause of action and none was established as a matter of law, Appellants were entitled to have their motion for judgment non obstante veredicto granted. We sustain Appellants' Point of Error No. VI. It is not necessary for us to pass on the other points of error.

The judgment of the trial Court is reversed and judgment is rendered that Appellee be denied all relief from the Appellants.

## ON MOTION FOR REHEARING

Appellee has filed a motion for rehearing urging that the case should be remanded for a new trial rather than having judgment rendered for Appellants. Appellants have filed a reply to contest the motion for rehearing.

■ First, Appellee urges that the trial Court erred in excluding certain testimony concerning funds available to the Appellants which were not used to make payments on their note to the bank. We find no error in the trial Court's ruling, but in any event, Appellee readily admits that the matter was not preserved by a cross-point of error. This issue may not be raised for the first time on motion for rehearing. *Lafferty v. A. E. M. Developers and Builders Company,* 483 S.W.2d 279 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Stanfield v. Butler,* 475 S.W.2d 838 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.).

■ Appellee also urges that a take nothing judgment results in an unjust enrichment for the Appellants. Again, this is an

issue raised for the first time on motion for rehearing. There is no pleading in the trial Court on a theory of unjust enrichment. No special issue was requested on such a theory of recovery, even though the case was fully developed in the trial Court. No contention was made in the original briefs that the case had been tried on the wrong theory. A remand can only result in another "bite at the apple" on a theory which was waived when it was neither pled nor submitted to the jury in the trial of the case. In such instances, justice does not require a remand. *Owen v. Brown,* 447 S.W.2d 883 (Tex.1969).

It is also urged that we erred in determining the amount of money Mr. Dipp had in the property which was foreclosed. We used the figures reflected in his testimony. But in any event, without establishing a ground of recovery, the amount of the loss is immaterial.

We have carefully considered the Appellee's motion for rehearing, and it is overruled.

The Appellants, in their reply to the motion for rehearing, correctly point out that we were in error in our original opinion in holding that their motion for instructed verdict had not been re-urged at the conclusion of all of the evidence. The supplemental statement of facts does reflect that the motion was re-urged and overruled by the trial Court after both sides closed their case. Therefore, the Appellants' Points of Error Nos. V and VII, which contend that the trial Court erred in failing to grant their motion for directed verdict because of the lack of pleadings and evidence to support a tort theory of recovery, should have been and are sustained.