## CARUTH v. CARUTH.

(Court of Civil Appeals of Texas. Amarillo. Feb. 3, 1912.)

1. CONTRACTS (§ 186*) — RIGHTS OF THIRD PARTIES.

While, in a suit by one brother against another to enjoin the latter from sending to plaintiff's home an imbecile sister, for whose support defendant had contracted with their parents, plaintiff, in his individual right, could not rely upon the contract, it not appearing that he was in privity or was affected thereby, he was entitled to show the contract to establish defendant's legal and equitable liability to care for the sister as a basis of liability to plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 790–797; Dec. Dig. § 186.*]

2. INJUNCTION (§ 57*)—NUISANCE—RIGHT TO RELIEF.

One brother is not entitled to enjoin another from breaking a contract, made with their parents, to support an imbecile sister, on the theory that the breach will result in a nuisance to plaintiff, in that plaintiff will be chargeable with her support, inconvenienced, and distressed, since, even if the sister's presence would constitute a nuisance, plaintiff would have legal remedy against defendant for compensation for the sister's maintenance.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 57.*]

3. SPECIFIC PERFORMANCE (§ 17*)—CONTRACT FOR SUPPORT—WHO MAY ENFORCE.

A contract by defendant with his parents to support his imbecile sister is subject to specific performance by defendant's brother as the sister's next friend, but not in the brother's individual right.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 38–46; Dec. Dig. § 17.*]

Appeal from District Court, Wilbarger County; S. P. Huff, Judge.

Action by T. W. Caruth against J. G. Caruth. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

R. W. Hall, for appellant. W. D. Berry, for appellee.

GRAHAM, C. J. Appellee filed this suit in the district court of Wilbarger county on September 6, 1909, against appellant, praying for a temporary and perpetual injunction.

The trial court having indorsed on the original petition his fiat, as follows: "The within petition presented to me on this day, and after examining same I am of the opinion that the prayer for the writ of injunction should be granted. It is, therefore my order that the clerk of the district court of Wilbarger county file this petition, and that he issue the writ of injunction prayed for, restraining the defendant from bringing or sending Tynie Caruth to plaintiff or his home, and from threatening to bring or send her back to plaintiff or his home, and from writing threatening letters to plaintiff about her (Tynie Caruth), and that defendant do not further annoy plaintiff in any way about her, upon plaintiff executing a bond with two or more good and sufficient sureties in the sum of $500, conditioned as the law requires"—and the bond required having been filed and approved, and the writ as ordered having been issued and served on February 10, 1911, appellee filed his first amended petition, and on the same day filed his supplemental petition, being the pleading of appellee on which final judgment was entered on February 14, 1911. The case was tried before a jury and submitted to them by the trial court on special issues, and on their answers to said issues the judgment was rendered for appellee.

On the return of the verdict of the jury, both appellee and appellant filed their written motions and requests for judgment in their favor, respectively, thereon; appellant's said motion was by the court overruled, to which action he excepted, and, the court having granted appellee's said motion and entered judgment accordingly, and having overruled appellant's motion for a new trial, seasonably filed and presented, appellant excepted, gave notice of appeal, and brings the case before us on numerous assignments of error; but, because of the disposition we shall make of the appeal, it becomes unnecessary to discuss them, further than to say they are amply sufficient to raise the questions on which the appeal will be disposed of.

Appellee's pleadings show clearly a suit in his individual capacity, brought in his own right and for his benefit, against appellant, and as grounds for a temporary and perpetual writ of injunction alleged, in substance, that appellee and appellant were brothers; that they had a sister who from infancy had been mentally an imbecile; then alleged a contract by appellant with his parents, during their lifetime, by which appellant had agreed with said parents, in consideration of their giving and transferring to him certain property, to furnish a suitable

home for said parents, as well as said imbecile sister, and also to support, maintain, and take care of the three of them during the lives of each of them, an appropriation by appellant of said property, and a performance by appellant of said contract during the remaining period of the lives of the parents and for some time thereafter, but an effort on appellant's part to repudiate said contract as to said imbecile sister a short time before, as well as at the time of, the filing of the suit and the trial, in such way and under such circumstances as constituted a nuisance as to appellee and his family.

[1] Aside from appellant's answer to the merits of appellee's pleadings, appellant urged a general demurrer and many special exceptions, all of which were by the trial court overruled, and which rulings severally are complained of in this court, under proper assignments of error, but none of which, we think, are well taken, as they show that appellant excepted to appellee's pleadings on the grounds that they sought the enforcement of a contract to which he was not a party, and in which he had no interest; and, while we believe appellee in his individual right could not base a suit or right of recovery on the contract made by appellant with his parents, there being no allegations to show that he in any way was privy to said contract, or had any rights, legally or equitably, therein, or that he was affected thereby, we also believe that it was proper to allege and prove said contract as a means of showing the legal and equitable liability of appellant to care for and have control of said imbecile sister, as a basis of the responsibility, as well as the liability of appellant for any nuisance as to appellee, if any, that might be committed by said imbecile sister, or by said appellant as a result of any nuisance as to appellee, arising from the manner in which said contract was performed; and we think the pleadings of appellee sufficient to show that, as a result of the mode and manner in which appellant is therein charged with supporting and maintaining said imbecile sister, and was threatening to continue to support and maintain her, such, if proven, constituted a nuisance as to appellee and his family.

[2] The statement of facts and the findings of the jury on the special issues show clearly that the contract, as alleged by appellee in his pleadings, had been made by appellant with his parents in their lifetime, and that it had been by said parents on their part performed, and that appellant had received and appropriated to his own use and benefit, during the life of his parents, the consideration for which he was to furnish a home for his said parents and imbecile sister, as well as support and maintain them during the life of each of them; and, further, that appellant had, after the death of his parents, failed to perform his said contract as to said imbecile sister, and was threatening to continue so to do. We find nothing in either the statement of facts or the findings of the jury showing or tending to show that appellee was in any way privy to said contract, or that he had any legal or equitable rights therein, or that he was or could be affected in his rights thereby.

The parents had an absolute right to dispose of their property, during their lifetime, as they saw fit, and appellee, in neither his legal nor equitable rights, was affected thereby, and, as there is no legal or equitable principle known to us and recognized in the courts that would require either appellee or appellant to support their imbecile sister in the absence of a contract, based upon a proper consideration so to do, appellee's obligations, recognized by law or equity, were neither increased nor diminished as a result of said contract or the breach, or threatened breach, thereof by appellant.

It being shown, however, that, as a result of the contract, appellant became legally and equitably bound for the proper support, maintenance, and management of said imbecile sister, if his failure so to do, or his threatened failure so to do, resulted in a nuisance as to appellee or his family, a court of equity had the power to prevent the creation of such nuisance, or to abate it, if it existed, on the same principle that one could be enjoined from allowing an animal or other property under his control, and for the control and management of which he is responsible, becoming a nuisance as to another. We fail, however, to find any fact found by the jury in their special findings or any evidence in the statement of facts warranting the conclusion that appellant was performing his contract, or failing to perform it, in such mode and manner at the time of the trial, the filing of the suit, or at any other time, as constituted a nuisance as to appellee or his family, or that appellant had ever threatened so to do.

The strongest fact found by us in the record, as we view it, looking to such a conclusion is found in the following answers made by the jury on the special issues submitted, as indicated below: "Q. Would the care of Tynie be a burden upon plaintiff and his family, and give them inconvenience or distress? State what would be the effect, if anything. A. Yes. Q. Would Tynie's condition be such as to cause distress to a person of ordinary and reasonable sensibilities? A. Yes." Both of which questions and the answers thereto were based, as shown by the record, on the hypothesis that she lived and made her home with appellee, and, in considering the legal effect of such facts as above found by the jury, it must be borne in mind that appellee rested under no legal or equitable obligation to permit said Tynie to so remain in his home, even if appellant failed to take care of her, as it was his duty to do; nor does any of the evidence tend to show that the appellant was by any physical force attempting to compel appellee to

take care of her, or had ever attempted so to do.

The record abundantly shows that he had sought to induce appellee to permit the imbecile sister to visit and remain at his home, and had sought to lead appellee to believe, and did cause him to believe, that if he did not do so appellant would neglect her and fail to properly provide for and take care of her, as required by the contract. That is, the record is full of evidence showing that appellant had attempted to bring about such a condition as would result in said Tynie not being properly taken care of, or at least in causing appellee so to believe, unless appellee prevented it by himself taking care of her; and it also shows that appellant, at the time the suit was filed, as well as at the time of the trial, was threatening to bring about a condition that would result in said Tynie not being properly taken care of, or at least cause appellee so to believe, unless appellee himself elected to take care of her, and thus avoid said consequence; but we find nothing in the record indicating that appellant had done anything, or was threatening to do anything, that could in any way cause appellee or his family any inconvenience or distress mentally, except such as would arise from a failure of said girl being properly taken care of, or except such as would flow from appellee and his family voluntarily taking care of her as a means of avoiding her being neglected, because of a failure on appellant's part to take proper care of her, as was required of him under the contract. And we think that neither or both of said conditions would, as a matter of law or equity, entitle appellee to the relief sought and granted, or to any part of it. 22 Cyc. p. 929, par. "c," and authorities cited under note 38.

Notwithstanding the fact that the jury answered the questions as copied above, we think, in the light of other evidence in the statement of facts, their finding cannot be held to show a nuisance under the entire record, in that T. W. Caruth, the appellee, testified as to his sister's condition as follows: "She is not helpless, nor is her mind deranged; she is not a lunatic. It is a fact that in some things my sister is like a child of 10 or 12 years of age. She cannot understand and do all the ordinary household work. She can write, and she can read fairly well. She can make up beds about like a child. She cannot cook—cannot season victuals at all. She cannot attend to the milk, but can churn; she usually milks. She understands how to do the ordinary duties around the house as a 10 year old child does. I have never seen her do any sewing. She cannot take care of small children. When she was at my house, she could care for my baby when the baby would do to suit her; but when it did not, she could not attend to it. We would go to church while she was there at the house, but would always leave some of the children with her, if we were going to leave the baby; we would not leave her alone in charge of the baby. I never did take her to church while she was at my house. She would go and visit Brother Gilbert's once in a while. I never took her anywhere while she was there. No; I was not ashamed of her, nor was my wife. My sister was a member of the Christian Church. I am a member of the church, and so is my wife; neither of us ever took her to that church while she was at our home. She would have been willing to go to that church. Yes; she has a happy disposition, but she fusses like a child does. She has a happy, childish disposition. There is nothing violent or dangerous about her; she slaps the children once in a while. She is about like another child 10 or 12 years old."

J. G. Caruth, the appellant, on the same subject, testified as follows: "The only way I can explain my sister's mental condition is that she is of a childish mind, and she is not disagreeable or fussy; she likes children. She has expressed a wish to go to Tom's [meaning appellee], but on account of the children more than anything else. She just likes to visit Tom. She did not know that he had a dislike for her. There is nothing violent in her disposition."

This testimony is a fair presentation of the condition of the unfortunate woman, the care of whom has produced this controversy; the other evidence showing her to be at the time of the trial about 44 years old; and from this we doubt that if her presence were forced on appellee, a brother, her presence in his family should be held to constitute a nuisance, and, if not, then in case she were wrongfully forced upon him in his home for care and protection, as well as maintenance, he would have, under the law, and did have under the law, a clear and legal remedy in the way of compensation in money as against appellant, who, the record shows, was responsible for her maintenance, and also was fully able financially to respond therefor, in which event no right to injunction would lie. Duck, Collector of Taxes, v. Peeler, 74 Tex. 268, 11 S. W. 1111.

[3] Had this suit been brought by appellee, as next friend of his imbecile sister, against appellant for specific performance of the contract made by appellant with his parents, or for damages for breach thereof, and for the protection of appellee and his family against a nuisance, as alleged in his pleadings, arising from the way said contract is therein alleged to have been performed, then the pleadings would have been sufficient to sustain the judgment rendered in its entirety. But an inspection of the pleadings will show that the suit was not brought by or for the imbecile sister, who alone was entitled to specific performance thereof, or damages for a breach thereof, nor was she in any way made a party thereto; hence the trial court was without pow-

er, under the pleadings to award a specific performance of the contract, as was done in one portion of the judgment appealed from. House v. Houston Waterworks, 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532.

The portion of the judgment appealed from involved in this appeal is as follows: "It therefore appearing to the court from said verdict and findings that the plaintiff has sustained his contention, or is entitled to the relief sought, it is ordered, adjudged, and decreed by the court that the temporary writ of injunction issued herein on the ―――― day of September, 1909, be and remain in perpetual force, and that the defendant, J. G. Caruth, be and he is hereby perpetually restrained from violating or repudiating his contract and agreement to care for and support his sister, Tynie Caruth, and that he be and is perpetually restrained from bringing or sending the said Tynie Caruth to plaintiff's home, and from in any manner placing or leaving, or permitting her to be placed or left, as a charge upon the hands of plaintiff, and from threatening to do so, and from in any manner annoying or harassing the plaintiff or his family in that connection."

There is no evidence found in the record or fact found by the jury, in our judgment, warranting the conclusion that appellant was doing or threatening to do anything that could, in contemplation of law or equity, constitute a nuisance as to appellee or his family; and we therefore conclude that there was no warrant for that portion of the judgment rendered by the trial court wherein appellant is enjoined from "bringing or sending the said Tynie Caruth to plaintiff's home, and from in any manner placing or leaving, or permitting her to be placed or left, as a charge upon the hands of plaintiff, and from threatening to do so, and from in any manner annoying or harassing the plaintiff or his family in that connection." Holbein v. De La Garza, 126 S. W. 42.

Aside from the other questions discussed, we think to permit the judgment as rendered by the trial court to stand would be at variance with every principle of justice and equity, as well as of law, in that said judgment would, if permitted to stand, have the effect of permanently and perpetually, during the remainder of the life of the unfortunate woman who is the subject of this controversy, prevent her going to the home of the appellee, even on a visit, for any period of time, however short, the record at the same time showing that she is attached to appellee and his family, and that it is a source of great pleasure to her to visit them and be with them; and we think it would be little short of inhumanity to deprive her of such a privilege, in view of the blood relationship existing between her and appellee, in the light of the slight inconvenience that this record tends to show would result from her being permitted such a privilege.

Aside from the rights and duties of appellant and appellee in this case, it is, we think, the duty of a court of equity to see to it that no reasonable pleasure possible to be had by the unfortunate woman is denied her, unless it be an absolute necessity. And we think her welfare and happiness, under all the circumstances in this case, as shown by the record, is entitled to more consideration at the hands of a court of equity than the mere convenience of either appellant or appellee, or of the families of either of them.

It follows from what we have said that the pleadings and the evidence in this case, under the law and well-established principles of equity, are insufficient to sustain the judgment rendered, in whole or in part, and that therefore the writ of injunction, issued on September 6, 1909, and served on appellant, should have been by the trial court dissolved; that the final judgment under the record should have been by the trial court rendered, on the evidence and findings of the jury, in favor of appellant, as prayed for by him; that the judgment appealed from should be set aside, and that judgment should be here rendered for appellant, dissolving the injunction issued on September 6, 1909, and dismissing this proceeding for want of equity; and that all costs of this proceeding in the trial court, as well as in this court, should be taxed against appellee, all of which is accordingly so ordered.

HALL, J., not sitting.