RICHARD SNELL

*v.*

CLINTON ELECTRIC LIGHT, HEAT AND POWER COMPANY.

*Opinion filed April 16, 1902—Rehearing denied June 10, 1902.*

1. CORPORATIONS—*electric light company must treat its customers without unjust discrimination.* A corporation organized to furnish electric light, heat and power does a business affected with a public interest, and while not bound, in the absence of statutory enactment, to treat all its patrons with absolute equality, it must treat them fairly and without unjust discrimination.

2. SAME—*when refusal to furnish transformer free is unjust discrimination.* Refusal of an electric light company to furnish light to a proposed patron unless he paid the cost of a transformer is unjust discrimination, where it appears that transformers were furnished free to all other patrons; nor is its refusal justified by the fact that it wired the houses of its other patrons for compensation, whereas the proposed patron had his house wired by other parties.

*Clinton Electric Light, etc. Co.* v. *Snell,* 95 Ill. App. 552, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

This was a petition for *mandamus,* filed in the circuit court of DeWitt county, to compel appellee to furnish appellant with electricity for lighting his house, as is alleged, upon the same terms and conditions that it required from its other consumers. The petition alleged

that appellee refused to connect its wires with appellant's house unless he would pay for a transformer or converter, in addition to the usual charge for electric lighting, which payment appellant refused to make on the ground that appellee did not require it of its other consumers but furnished them a transformer without any additional charge. A jury heard the evidence and found the facts specially. On the findings by the jury, and on the propositions of law afterward submitted and held, the court awarded the writ of *mandamus*. Appellee appealed to the Appellate Court for the Third District, which court reversed the judgment of the circuit court, and the petitioner appealed to this court.

The facts as found by the jury are, substantially, that appellant applied to appellee to furnish electricity for lighting his residence upon the same terms and conditions required by it from other consumers, and that appellee refused to do so; that appellee had not required other persons to pay for the use of transformers for dwellings, and that it was its general practice and custom to furnish the use of them free of charge for its customers; that it refused to furnish the use of a transformer to appellant because it had not been employed to wire his house, he having had such wiring done by one not connected with appellee; that appellee refused to connect with appellant's house on the ground that his residence was not properly wired, but the jury also found that such residence was properly wired; that appellee had furnished transformers free of cost to consumers in cases where it had furnished the wires and had done the wiring of the building for compensation, and that it considered the profits accruing to it therefrom to justify it in furnishing the use of transformers without a specific charge for them; that the object and purpose of a transformer are to protect the house from destruction by fire caused by too great a voltage of electricity, and the consequent destruction of the wires in the house.

A number of propositions to be held as law were offered by appellee, some of which were held as law by the court and some refused. One refused was: "Upon the findings of the jury the peremptory writ should be denied and judgment rendered against the petitioner (the appellant) for costs."

EDWARD J. SWEENEY, for appellant:

Gas and other companies which by their charters or contracts with municipalities enjoy practical monopolies, may be compelled, by *mandamus,* to furnish the commodity in reasonable quantity, on the same terms on which it is supplied to others, to one inhabitant who is willing to comply with such terms. 2 Spelling on Extraordinary Relief, 1303, 1304; 1 Abbott's Pr. 404; *People* v. *Manhattan Co.* 45 Barb. 136; *Telephone Co.* v. *State,* 118 Ind. 194; *Rogers Park Water Co.* v. *Fergus,* 178 Ill. 571.

Telephone companies must furnish equal facilities to all, and cannot discriminate against a person who tenders compliance with the rules established and followed as to other subscribers. 14 Am. & Eng. Ency. of Law, 163; *State* v. *Telephone Co.* 22 Alb. L. J. 363; *Transfer Co.* v. *Telephone Co.* 24 id. 283; *State* v. *Telephone Co.* 23 Fed. Rep. 539; *Telephone Co.* v. *Telegraph Co.* 66 Ind. 399; *Telephone Co.* v. *Commonwealth,* 3 Atl. Rep. 825; *Telegraph Co.* v. *Telegraph Co.* 66 Md. 399.

WARNER & LEMON, for appellee:

There is no statute of this State regulating the rights or prescribing the rules under which electric light companies shall do business, and in the absence of such statute such companies can fix their rates and establish their rules, subject only to the common law. *Zanesville* v. *Gas Light Co.* 23 N. E. Rep. 59; *Gas and Oil Co.* v. *State,* 34 id. 818.

Even in the case of railroad corporations, where they are regulated by statute, discriminations relating to any inequality of charge is not prohibited. What the law pro-

hibits in such cases is that kind of discrimination which is unjust or unreasonable.  *Railroad Co.* v. *Coal Co.* 79 Ill. 121; *Railroad Co.* v. *People,* 67 id. 11; *Railroad Co.* v. *Gage,* 12 Gray, 393.

Corporations organized for the purpose of furnishing light are not public corporations in the sense in which railroads and common carriers are.  They are rather of a *quasi* public nature, performing private service in lighting residences and buildings.  *Gas Light Co.* v. *Brady,* 72 Am. Dec. 360; *Commonwealth* v. *Gas Light Co.* 12 Allen, 77.

Mr. JUSTICE CARTER delivered the opinion of the court:

The trial court evidently held that the law applicable to the facts as found by the jury justified the awarding of the writ, for it refused to hold the proposition of law submitted on that question by appellee, while the Appellate Court was of the contrary opinion, for it made no finding of facts different from those found by the jury and the court below.  The only question here is, therefore, whether or not, upon the evidence as found, the appellee made an unjust discrimination against appellant in charging him for a transformer in addition to the regular rates for electric lighting.

There is no statute regulating the manner under which electric light companies shall do business in this State. They are therefore subject only to the common law and such regulations as may be imposed by the municipality which grants them privileges.  At common law, whether or not a difference in the treatment accorded to different patrons amounts to a discrimination must depend upon the surrounding circumstances.  A mere difference does not, of necessity, constitute unlawful discrimination.  Appellee, in its answer to appellant's petition, avers that the purpose and office of a transformer is chiefly for the protection of the house or building connected with the electrical system; that it prevents an excessive number

of volts of electricity from passing from the main street wire into the building to be lighted; that the wires usually used inside a building are much smaller than the street wires and incapable of safely carrying so many volts of electricity as pass along the street wires; that if all the voltage carried on the street wires were turned into the residence, the natural consequence would probably be that the house wires would melt and the heat from the excessive voltage would cause a fire; that it is to prevent this result that a transformer is necessary. A transformer or converter is described by counsel as a coil of copper wire contained in a sheet-iron box, and is usually placed on a pole outside of the building. Its office is to reduce the current from the main line, or, rather, to induce a lesser current in the wire leading to the house for house use. In this case the voltage would have been reduced from one thousand volts to fifty or a hundred volts. It appears that without the use of a converter the effect of turning this large voltage into a house would be to burn up the wires, and in the formation of short circuits there would be great danger of fire, and that the object of the converter is the protection of the house. It is a necessary appliance for the safe lighting of houses. The appellee had been in the habit of furnishing transformers, as needed, without any extra charge, for all houses which were wired for electricity by it, but claimed the right to charge for transformers in cases where it did not do the wiring, as it made no profit on the wiring in such cases. The transformer is just as much a necessary appliance in lighting houses as the pole on which it is fastened, or the wire that carries the electricity, or the boilers and dynamo used in generating it. It is entirely immaterial who does the wiring of the house—the electric light company or some other party; the transformer is necessary in either case. If the company does the wiring, that is a business distinct from that of furnishing electricity for lighting purposes,—just as the putting in

of gas and water pipes into a house is a distinct business from furnishing the gas or water to flow through them.

The jury found that the appellee had not demanded extra pay for the use of a transformer from any one else, and that it was its general practice and custom to furnish them free to its consumers. Appellee, being organized to do a business affected with a public interest, must treat all customers fairly and without unjust discrimination. While it is not bound, in the absence of statutory enactments, to treat all its patrons with absolute equality, still it is bound to furnish light at a reasonable rate to every customer and without unjust discrimination. In 29 Am. & Eng. Ency. of Law, 19, it is said: "The acceptance by a water company of its franchise carries with it the duty of supplying all persons along the line of its mains, without discrimination, with the commodity which it was organized to furnish. All persons are entitled to have the same service on equal terms and at uniform rates." In commenting on this, the Supreme Court of North Carolina, in *Griffin* v. *Goldsboro Water Co.* 30 S. E. Rep. 319, says: "If this were not so, and if corporations existing by the grant of public franchises and supplying the great conveniences and necessities of modern city life, as water, gas, electric light, street cars, and the like, could charge any rates, however unreasonable, and could at will favor certain individuals with low rates and charge others exorbitantly high, or refuse service altogether, the business interests and the domestic comfort of every man would be at their mercy.   *   *   * The law will not and cannot tolerate discrimination in the charges of these *quasi* public corporations. There must be equality of rights to all and special privileges to none." In *Cincinnati, Hamilton and Dayton Railroad Co.* v. *Village of Bowling Green,* 49 N. E. Rep. 121, the Supreme Court of Ohio said: "The light and power company have acquired in the village rights that are in the nature of a monopoly.   *   *   * Both reason and authority deny to

a corporation clothed with such rights and powers and bearing such relation to the public the power to arbitrarily fix the price at which it will furnish light to those who desire to use it.  *  *  *  The company was bound to serve all of its patrons alike.  It could impose on the plaintiff in error no greater charge than it exacted of others who had used its lights." In *Owensboro Gaslight Co.* v. *Hildebrand,* and *Owensboro Electric Co.* v. *Hildebrand,* 42 S. W. Rep. 351, the Court of Appeals of Kentucky said: "Practically they have a monopoly of the business of manufacturing and furnishing gas within the corporate limits of the city.  It is therefore their duty to furnish the city's inhabitants with gas, and to do so upon terms and conditions common to all, and without discrimination.  They cannot fix a variety of prices or impose different terms and conditions, according to their caprice or whim."

It has been held at common law and in the absence of statutes, in the case of common carriers, that as long as they carry at a reasonable rate for every shipper, no one can complain if they are willing to carry for others at a less rate.  (5 Am. & Eng. Ency. of Law,—2d ed.—179.) If we apply this rule to the case at bar, it will be noticed that the appellee has demanded of appellant *more* than it has of any of its other customers.  This is not the favor allowed by the common law, as just cited, but an unjust discrimination.  Appellee has discriminated unjustly against appellant in any view of the law and the circumstances that we can take, and it follows that the judgment of the circuit court was right.

The judgment of the Appellate Court will be reversed and the judgment of the circuit court affirmed.

*Judgment reversed.*