## DALLAS POWER & LIGHT CO. v. CARRINGTON et al. (No. 8730.)*

(Court of Civil Appeals of Texas. Dallas. Nov. 18, 1922. Rehearing Denied Dec. 22, 1922.)

1. **Municipal corporations ⬤683(1) — City cannot contract with public utility for rates to be charged another.**

A city in granting a franchise to a public utility cannot contract for service to be furnished and rates to be charged another municipality.

2. **Contracts ⬤186(1)—Only party or privy can maintain action for breach.**

Generally, only parties to a contract and those in privity with them can sue for its breach.

3. **Municipal corporations ⬤111(1) — Ordinance adopting franchise "so far as applicable" too indefinite.**

An ordinance of H. in terms adopting, "so far as applicable to" H., the provisions of a franchise, relating to service and rates given a public utility by D., is too vague and obscure.

**4. Municipal corporations ⬳62—Ordinance invalid as attempted delegation of lawmaking power.**

An ordinance of H. in terms adopting, in so far as applicable to H., a franchise ordinance of D., is invalid as an attempt to delegate its lawmaking power, which it cannot do.

**5. Electricity ⬳11—Charging different rates to different cities under similar conditions discrimination.**

It is a discrimination, an arbitrary difference in price, which Rev. St. art. 1025, authorizes the court to prevent and abolish, for a public utility, having its light and power plant in D. and therefrom furnishing electricity to both D. and H., to charge much higher rates to the citizens of H. than to those of D., though the conditions in respect to distance from power plant, number of feeders on lines, and costs of supplying current, are similar.

**6. Electricity ⬳11—Different rates to obtain proper compensation must be based on classification from real differences.**

Though by Rev. St. art. 1018, a light company is entitled to rates which will yield 10 per cent. per annum on its investment, it, if charging different rates, must do so through a classification of customers and districting of territory based on real differences, something more than municipal lines.

Dohoney, Special Judge, dissenting.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by B. W. Carrington and others against the Dallas Power & Light Company. From judgment granting injunction, defendant appeals. Affirmed.

Templeton, Beall, Williams & Worsham, of Dallas, for appellant.

Cockrell, McBride & O'Donnell and Spence, Haven & Smithdeal, all of Dallas, for appellees.

SERGEANT, C. J. The city of Dallas is a municipal corporation created under a special act of the Legislature of Texas, with its powers and duties defined in the charter creating it. The town of Highland Park adjoins the city of Dallas, but is a separate municipality of 2,800 population, organized and existing under the general laws of the state, subject to the limitations and having the authority set out in such general statutes. On January 8, 1917, the city of Dallas enacted an ordinance granting to J. F. Strickland a franchise to own a light plant and equipment and to operate the same in the city of Dallas for the purpose of supplying light and power to users within the city limits and beyond. The provisions of this ordinance, after enactment, were accepted in writing by said J. F. Strickland. Appellant's power plant is in the city of Dallas, and that part of its system located in Highland Park is physically connected with that part of its system located in Dallas. Until June 1, 1920, appellant, under the terms of said franchise, supplied light to the users within the city of Dallas at the rate provided for therein, which on said date, and for some time prior thereto, was at the rate of six cents per kilowatt hour with a minimum charge of 50 cents per kilowatt hour. During said period appellant also supplied light to the residents of Highland Park at the same rate, although such town, having the power by general statute to regulate public utilities, had not granted any franchise or passed any legislation relating to light service or rates. On June 1, 1920, appellant divided into districts the territory supplied by its plant, making the town of Highland Park one unit and the city of Dallas another. It continued to supply the city of Dallas light at the old rate in accordance with the terms of the franchise, but it raised the rate in Highland Park to 15 cents per kilowatt hour for the first 10 kilowatts; 10 cents per kilowatt hour for the next 25 kilowatts and 8½ cents per kilowatt hour for the next 65 kilowatts, with a minimum charge of $1.50 per month; the average rate approximating 10½ cents per kilowatt hour. Appellant contended that the raise in the rate was not only justifiable but necessary, in that article 1018 of the Revised Statutes of Texas permitted it to make 10 per cent. on the value of its investment, and that based on the actual value of its physical equipment in Highland Park, it not only failed to make the proper percentage but actually operated at a loss under the 6-cent rate. Four and one-half months later and on October 14, 1920, the council of Highland Park enacted an ordinance adopting, "in so far as applicable" such town, the provisions of the Dallas franchise, with a view of maintaining the same character of service and rates effective in Dallas. Thereafter, on October 18, 1920, appellees, residents of Highland Park, for themselves and for all other citizens of said town using light in their residences, brought this suit in the district court of the Forty-Fourth judicial district of Texas, at Dallas, contending that appellant was discriminating against them in the rate charged for light in violation of article 1025, Rev. St., and article 1283f of Vernon's Sayles' Ann. Civ. St. of Texas, and sought an injunction to restrain appellant from charging the citizens of Highland Park a higher rate than that charged the citizens of Dallas. A temporary injunction was granted as prayed and on hearing was made permanent on July 28, 1921. From the judgment granting such injunction the Dallas Power & Light Company appeals to this court.

[1] Appellees contend that the Dallas franchise prescribed and fixed the rates to be

charged by appellant for light in Highland Park and that its terms are binding on the Dallas Power & Light Company. The provision of section 25 of the Dallas franchise relating thereto and upon which appellees base such contention is as follows:

"Except as herein specifically provided otherwise, everything in this ordinance contained relating in any way to the property and business of the grantee within the city shall equally apply to all property and business of the grantee in Dallas county without the city, to the extent that the same are operated in connection with and as a part of the general physically connected system of grantee operated within the city."

Appellant's contention is that a careful reading of the entire franchise, especially that portion relating to physical values of property within and without the city limits, that referring to extensions, betterments, and improvements, and that dealing with annexations of outlying districts, will show that such portion of section 25 just quoted applies only to valuation and to the status of new additions to the territory of the city of Dallas; and especially deny that this was an attempt to fix a rate for Highland Park. While there is some doubt as to the meaning of the section in such respect, and while we are inclined to the view that the city of Dallas had in mind contracting only for its own municipality and its own citizens, yet even if this section did attempt to fix a rate for Highland Park, such could not legally be done, and any effort in that respect would be a nullity. A municipal corporation, existing under a special act of the Legislature, has only such powers as are conferred it by its charter. And nowhere in the Dallas charter is the power conferred on the city of Dallas to legislate or fix public utility rates for Highland Park. In its own sphere, each municipal corporation is supreme; but it cannot invade the province of another municipality and legislate for it, whether such legislation be for its benefit or to its detriment. Coextensive with its own limits, the city of Dallas can legislate on all subjects affecting it, subject only to its charter limitations and to the laws of the state. But beyond this it cannot go. The laws, ordinances, and contracts of Highland Park and those affecting its internal conduct and affairs can be made by the town of Highland Park alone, subject only to the general laws of the state. Only Highland Park can contract with public utilities for service to be given and rates to be charged that municipality. The city of Dallas is powerless to do so. Therefore whether or not the city of Dallas attempted to legislate or contract for Highland Park or to fix the character of service to be given or the rates to be charged such town for light, it could not lawfully do so, and such attempt

was ultra vires, beyond its charter powers, of no effect, and void. Section 4483 of Fletcher's Cyclopedia Corporations; Moberly v. Richmond Telephone Co., 126 Ky. 369, 103 S. W. 714, 31 Ky. Law Rep. 783.

[2] Further, Highland Park was not a party to the franchise agreement between J. F. Strickland and the city of Dallas, nor was the franchise made for its especial benefit. It is a general rule, well established, that only parties to a contract and those in privity with them can maintain a suit for breach of such contract. Had section 25 of the franchise undertaken to fix a rate for Highland Park, appellees still could not maintain an action for breach of its provisions, being neither parties thereto, and no privity of contract existing between them and the contracting parties. In House v. Houston Waterworks, 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532, the city of Houston had contracted with the Houston Waterworks to furnish water up to a sufficient pressure, which it had failed to do by reason whereof House's property was destroyed by fire. House brought suit against the waterworks for his loss. The case went to the Supreme Court, where recovery was denied him on the theory that he, being neither a party to the contract nor in privity therewith, could not maintain the action. Judge Brown, speaking for the court, declared:

"The plaintiffs are not party to nor in privity with the contract; it was not made expressly for their benefit; the defendant had not been guilty of any breach of duty that it owed the plaintiffs apart from the contract, nor of a duty growing out of any relations between them, credited by or arising out of the contract, and it is clear that plaintiffs cannot maintain the action ex delicto for the breach of the contract itself." Union Railway Co. v. McDermott, 53 Minn. 407, 55 N. W. 606; Gulf Compress Co. v. Harris, 158 Ala. 343, 48 South. 477, 24 L. R. A. (N. S.) 399; South Pasadena v. Los Angeles Railway Co., 109 Cal. 315, 41 Pac. 1093.

[3, 4] The proposition is advanced by appellees that the town of Highland Park, acting under the authority of article 1018 of the Revised Statutes, enacted an ordinance on October 14, 1920, by which it fixed a rate to be charged for light, and that such ordinance binds appellant to furnish light to appellees on the basis therein specified. An ordinance is a by-law of a municipality passed by its governing body for the regulation, management, and control of its affairs and that of its citizens. Its validity is dependent upon strict compliance with the laws of the state relative to legislative enactments and upon the terms of such city's charter if it has one. It must be clear, definite, and free from ambiguity. Measured by these rules, the ordinance of October 14, 1920, passed by the council of Highland Park, cannot stand. It seeks merely to adopt the provisions of the Dallas

franchise relating to service and rates "in so far as applicable to Highland Park." As counsel for appellant facetiously remarks: "How far is that?" Such ordinance is manifestly too vague and obscure to have any validity, and therefore is void; its meaning not being susceptible of ascertainment. McQuillin on Municipal Corporations, § 651; State v. Cedaraski, 80 Conn. 478, 69 Atl. 19; Chicago, I. & L. Ry. Co. v. Salem, 166 Ind. 71, 76 N. E. 631; San Francisco Woolen Factory v. Brickwedel, 60 Cal. 166. But there is another and an equally cogent reason why such ordinance is of no effect. A municipal corporation can no more delegate to another municipality the right to pass legislation for it, than it can itself legislate for such other, or outside its own limits. No power or authority exists in Highland Park by state law or elsewhere either express or implied to delegate to the city of Dallas the right to make a binding contract affecting its rates or service or concerning its internal affairs. Any act attempting such unwarranted delegation of authority would be beyond its corporate powers, invalid, and unenforceable. Therefore, on account of its unauthorized attempt to delegate the lawmaking power of Highland Park to another municipal corporation as well as from its vagueness and ambiguity, the ordinance in question is void, and no right thereunder accrued to appellees by which they could force appellants to furnish light under its terms.

[5] We come now to the question of whether or not the Dallas Power & Light Company discriminated against the town of Highland Park or its citizens in the rates charged for light service. Discrimination is the breach of that duty incumbent upon one to treat alike all with whom he deals. As applied to public utility corporations, discrimination means an inequality of service or rates among its customers. An arbitrary difference in the price charged for electric current necessarily amounts to discrimination.

Article 1025 declares:

"All extortionate and unreasonable rates charged by public utility corporations, as hereinafter defined, are hereby declared to be unlawful; and the district courts of this state are hereby vested with jurisdiction and full power and authority to regulate, prevent and abolish the same; and, to this end, said courts are given the power and authority, whenever the public interest may require, to fix and establish rates for the service and products of all public utility corporations, and, whenever the public interests may require and to carry out the provisions herein conferred, said courts are hereby expressly authorized to issue injunctions, quo warranto, and all other writs for the purpose of carrying out and making effective the purposes of this chapter."

The record discloses, and the trial court's conclusion of fact finds: That appellant's light and power plant is located in the city of Dallas; that both Dallas and Highland Park are served by this same plant; and that the rate of 6 cents per kilowatt hour is charged to all users of electric current in the residential portions of Dallas, including those sections known as Munger Place, Jimtown, Oak Cliff, Oak Lawn, Mt. Auburn, and Sunset Hill. Highland Park is charged a schedule of rates averaging approximately 10½ cents per kilowatt hour, although its citizens live no further from appellant's plant and it costs no more to supply them with electric current then it costs to supply residential consumers in the various residential sections of Dallas just named. The conditions surrounding the consumers of electric light in Highland Park are similar to those of the consumers of electric light in the corporate limits of Dallas in respect to distance from the power plant, the number of feeders on the lines, and the costs of furnishing light. A due consideration of these facts shows that there exists a discrimination against Highland Park by the Dallas Power & Light Company within the meaning and intent of the statute. Accordingly, the rate charged residents of Highland Park in excess of the rate charged Dallas residents under the existing conditions just named is invalid.

In Snell v. Clinton, 196 Ill. 626, 63 N. E. 1082, 58 L. R. A. 284, 89 Am. St. Rep. 341, an electric light company required a resident to pay the costs of a transformer as a prerequisite to furnishing him light. As the other patrons of the light company were not required to meet this condition, the court held that a discrimination existed.

In American Waterworks v. State, 46 Neb. 194, 64 N. W. 711, 30 L. R. A. 447, 50 Am. St. Rep. 610, the court held that a discrimination existed where the water company required defendant to pay one dollar as penalty for arrears together with the amount due before it would turn water on again when such was not required of other water users. In Montgomery v. Green, 60 South. 900 (Ala.), the court held that a water rate charged by the city of Montgomery to the citizens of Cloverdale higher than that charged the citizens of Montgomery, on the theory that Cloverdale was a separate municipality, was discriminating. A number of cases to the same effect are cited in the opinion of the court in the case last quoted.

[6] Complaint is made by appellant that the ruling of the trial court was in violation of article 1018 of the Revised Statutes of Texas and in effect forced appellant to furnish light to the town of Highland Park at a rate that not only prevented its making the statutory return on its investment, but forced it to operate in that community at a distinct loss. The statute reads as follows:

"The city council of all cities and towns in the state of Texas of over two thousand population, incorporated under the general laws

thereof, shall have the power to regulate, by ordinance, the rates and compensation to be charged by all water, gas, light and sewer companies, corporations or persons using the streets and public grounds of said city or town, and engaged in furnishing water, gas, light or sewerage service to the public, and also to prescribe rules and regulations under which such commodities shall be furnished, and service rendered, and to fix penalties to enforce such charges, rules and regulations; provided, that the city council or board of aldermen shall not prescribe any rate or compensation which will yield less than· ten per cent. per annum net on the actual costs of the physical properties, equipments and betterments."

With 'appellant's contention that the trial court's judgment was contrary to this statute we do not agree. It is altogether possible and without discrimination to treat all users served by one plant as belonging to a single unit; and to fix a rate for such entire class that will apply equally to them all and at the same time be sufficient to produce the percentage on the investment authorized by the statute. Likewise it is altogether possible, and without discrimination, to separate all users of light supplied by a single plant into various zones or units, classifying them so that the distance from the plant, number of lines to the feeder, and the cost to supply light will average the same to all persons within such zone; and to fix a rate for each of such units that will produce the statutory return; the rate for each zone being based on the investment therein and appertaining thereto, with the same charge to each of the zones having similar conditions and being similarly situated. But a division of territory served by a single plant into units or zones based on municipal lines, rather than on actual physical conditions and situation, 'is, we think, improper as a basis upon which to fix a rate.

We conclude therefore that the city of Dallas cannot legislate nor fix a rate for the town of Highland Park; nor can the town of Highland Park delegate such right to the city of Dallas by ordinance or otherwise; that no privity of contract exists whereby Highland Park or its citizens can maintain a suit against the Dallas Power & Light Company under any of the provisions of the Dallas franchise; that the ordinance passed by the council of Highland Park on October 14, 1920, is invalid; that the facts shown in the record constitute a discrimination on the part of the Dallas Power & Light Company against the citizens of Highland Park in respect to the rates charged for light; and that although a public utility corporation is entitled under the statutes to a return of 10 per cent. on its investment, yet by a proper districting of its territory and classification of its customers such returns can·be made without discrimination based on a charge alike to all consumers under similar conditions and similarly situated.

The judgment of the trial court is affirmed.

DOHONEY, Special Judge. I am unable to concur in the disposition of this appeal made by the majority of the court. The following opinion was prepared as the opinion of the court but not concurred in by my brethren. Since it contains statements of fact shown by the record that I consider material, at the expense of repetition in some other respects of what is contained in the majority opinion, I am filing same as a dissenting opinion:

On January 18, 1917, the city of Dallas enacted an ordinance granting J. F. Strickland a franchise to acquire, own, construct, maintain, use, and operate, in the city of Dallas, an electric heat and power plant and transmission and distributing system; to use the streets and highways of the city of Dallas for the purpose of transmitting and conducting electricity and supplying the same to persons, corporations, and industries both within and beyond the limits of said city. Appellant is now the owner of said franchise and is operating a light and power plant thereunder in the city of Dallas and furnishing electric current both in the city of Dallas and beyond the city limits.

Appellees are residents of Highland Park, an incorporated town in Dallas county, and adjacent to the city of Dallas. Until June 1, 1920, appellant was supplying residential consumers of electricity for lighting purposes both within and without the city of Dallas at the rate provided for in the franchise which at, and for some time prior to, said date, was 6 cents per kilowatt hour with a minimum charge of 50 cents per month. On June 1, 1920, appellant advanced the rate for this class of consumers outside the city of Dallas, including the appellees and all other users of electricity for lighting purposes in Highland Park, to a minimum of $1.50 per month and a rate of 15 cents per kilowatt hour for the first 10 kilowatts, 10 cents per kilowatt hour for the next 25 kilowatts, and 8½ cents per kilowatt hour for the next 65 kilowatts. The evidence shows that this rate, when practically applied, is an average rate of approximately 10½ cents per kilowatt hour.

Appellees, for themselves and all other consumers of electric current for lighting purposes in Highland Park, brought this suit to enjoin appellant from putting the new rate into effect and to restrain them from cutting off such consumers or discontinuing their service upon their failure to'pay said rate or any other rate in excess of that applied and charged to residential consumers of current for lighting purposes in the city of Dallas; alleging that they are entitled to the Dallas rate under the terms and provisions of the

franchise; and in the alternative, regardless of the franchise, that to charge them a higher rate than is charged to the same class of consumers within the city of Dallas would be an unjust discrimination and therefore prohibited by law.

The district judge, to whom plaintiff's bill was presented, granted a temporary injunction on October 18, 1920, and after trial and hearing on the merits by judgment of date July 28, 1921, perpetuated the injunction restraining appellant, as prayed by appellees in their petition.

Appellant has appealed from this judgment and brings the case before this court on numerous assignments of error and questions raised in motion for a new trial. In the disposition of the case it will not be necessary to discuss all of these questions in detail, and I will consider only the two points referred to above in the appellees' petition as grounds for the injunction sought.

The franchise under consideration is rather a voluminous document going into minute detail as to the respective powers and duties of the city and the grantee. For the purpose of this opinion, I quote and state the substance of some of its provisions as bearing upon the questions involved.

Section 2 of the franchise, among other things, provides:

"If the present or future corporate limits of the city shall be extended so as to include within the city limits property of the grantee which was theretofore outside of the city limits, then such property shall be subject in all respects to this ordinance."

By the terms of the franchise, a valuation of the property that the grantee obligated himself to acquire was agreed upon and fixed, for the purpose, among other things, of affording a basis for dividends or a return upon the investment for the owners of the property.

Section 25 makes provisions for adding to this valuation or property value, as it is termed in the ordinance, whenever extensions, betterments, or improvements are made and added to the plant either within or without the city of Dallas when connected with and becoming a part of the system. Appellees quote as sustaining their first contention the following excerpt from said section:

"Except as herein specifically provided, otherwise, everything in this ordinance contained relating in any way to the property and business of the grantee within the city shall equally apply to all property and business of the grantee in Dallas county without the city, to the extent that the same are operated in connection with and as a part of the general physically connected system of the grantee operated within the city."

The franchise authorizes the grantee or his assigns to pay 9 per cent. per annum to stockholders or owners of the property as a return upon their investment and requires them out of their earnings to establish certain reserve funds and maintain the same. The income of the grantee or assignee of the franchise to be derived from the operation of the plant consist, not only of receipts from users of lights for residential purposes, but also from users of electricity for all other purposes, including power, heating, and commercial lighting. Users of current other than those for residential lighting purposes pay for the same by contract based on various schedules to be approved by the city commissioners or supervisor. The rate for residence lights is fixed by the franchise beginning on a basis of 8 cents per kilowatt hour with a minimum charge of 50 cents per month. When the reserve funds above referred to, reach certain amounts, this rate is automatically lowered; and, if the reserve funds shall become depleted, the rate may be increased until the reserve funds are brought back to the required amount. The franchise requires the grantee and his assigns to furnish electric current for power and heating purposes by contract as above referred to and for commercial lighting as well as for residential lighting purposes.

I quote the following from paragraph 23 of the franchise:

"It shall be the duty of the board of commissioners and the supervisor to co-operate with the grantee and to make rules and regulations by ordinance or otherwise to bring about the greatest and most general commercially practical use of grantee's service in such way as will improve grantee's load factor and thereby tend to reduce the unit cost of grantee's service, to the end that the public welfare may be better served by promoting the industrial development of the city and that the level of grantee's rates may be reduced in the public interest."

The portion of the franchise referred to providing for rates for residential lighting service does not expressly refer to consumers outside of the city limits. No inference can be drawn from the language quoted or other portions of the franchise that would indicate an intention upon the part of the city commissioners to fix a rate for such service outside the city. The language quoted above from the twenty-fifth section of the franchise, relied upon by appellees as applying to rates outside the city limits, when construed in connection with other portions of the franchise quoted, seems to me to apply only to the question of valuation. The language of the franchise taken as a whole manifests a clear intention on the part of the city commissioners to legislate in the interest of the municipality of Dallas and its inhabitants. This, in fact, is all they had power to do. Treating this franchise as a contract between the city of Dallas and Strickland and those

claiming under him, appellees are in the position of third parties, not privy to the contract but claiming rights under it. As a general rule, third persons not parties to a contract can claim no rights under it unless the contract was made especially for their benefit and can maintain no suit upon such contract unless the right to sue is expressly conferred. Taylor v. Dunn, 80 Tex. 652, 16 S. W. 732; House v. Houston Waterworks Co., 88 Tex. 238, 31 S. W. 179, 28 L. R. A. 532. In Taylor v. Dunn, Chief Justice Stayton, passing upon an ordinance of the city of Austin granting a temporary right of way over the streets for a railroad to be used in the construction of the capitol and an indemnity bond given by Taylor, the grantee of the franchise, says:

"In construing such a contract the power of a municipality to contract, as well as the subject-matter of the contract and the purpose intended to be accomplished by it, should all be looked to, and it ought never to be inferred that a contract made by a municipal corporation was intended to inure to the benefit of an individual, further than this may be necessary for the protection of the municipality, unless its charter expressly or by necessary implication confers the power to make contracts to inure to the sole benefit of individuals, and the intent so to do clearly appears in the contract itself."

Appellees are not entitled to the benefits of the rate fixed by the franchise.

As to the question of discrimination, the trial court seems to have based his holding upon that issue upon evidence which is undisputed showing that many of the consumers of current for residential lighting purposes in Dallas reside at a greater distance from appellant's power plant than do appellees and other users of current for such purposes residing in Highland Park. There is other evidence in the case showing, without contradiction, that the rate made to residents of Dallas for lighting purposes in itself would involve a loss to appellant, but that, taking all of its receipts from all classes of business including residence lighting, power, heating, and commercial lighting, that it has been able out of its earnings to pay a dividend of 9 per cent. on the investment and create and maintain its reserve funds. It further appears that under a fair allocation of its portion of the operating expenses that the 6-cent rate does not produce sufficient income from Highland Park consumers to pay operating expenses. It further appears that the consumption of current by the inhabitants of Highland Park for any other purpose except residential lighting is negligible. The evidence also shows that the rate appellant undertook to put into effect in Highland Park

on June 1, 1920, would yield sufficient income to pay something less than 9 per cent. interest upon the investment, and that the rate here complained of is the rate applied to all consumers of electric current for residential lighting purposes outside of the City of Dallas.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1283f, included in chapter 21a, relating to gas, electric current, and power corporations, provides:

"It shall be unlawful for any corporation organized under this act to discriminate against any person, corporation, firm, association or place in the charge for such gas, electric current or power, or in the service rendered under similar and like circumstances."

Appellant had the right, in view of the facts disclosed by this record, to separate its customers into classes as it did, that is, one class residing in the city of Dallas and the other class outside said city, and apply a different rate to each class. Clearly, the consumers of electric current for residential lighting in Dallas are not similarly situated to those outside in view of the great amount of current consumed by industries and commercial enterprises in the city. Service furnished this class of consumers is a source of income that enables appellant to make the 6-cent rate for residential lighting to users of current in Dallas, and this is a benefit they are entitled to under the franchise. Considered from the standpoint of income received for current from all classes of customers within Dallas as a unit, and from those without, the evidence does not show discrimination, under the statute, because appellees are not similarly situated to the same class of consumers in Dallas.

A difference in the rate charged one customer or group of customers and another by a public service corporation is not necessarily an unjust or illegal discrimination. Varying conditions under which the service is rendered will justify a higher rate to one class than to another, and, unless the evidence shows a higher rate charged one class than that charged another under similar and like conditions, there is no discrimination. H. & T. C. Ry. Co. v. Rust et al., 58 Tex. 98; Cock et al. v. Marshall Gas Co., 226 S. W. 464; Western Union Tel. Co. v. Call Publishing Co., 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 769; 10 Corpus Juris, § 749, p. 473.

I conclude that the trial court erred in granting the injunction and rendering judgment perpetuating the same, and that said judgment should be reversed, the injunction dissolved, and judgment rendered for appellant.