## ATASCOSA COUNTY v. CITY OF PLEASANTON.

### No. 10292.

Court of Civil Appeals of Texas. San Antonio.

May 11, 1938.

Rehearing Denied June 8, 1938.

A. N. Steinle, of Jourdanton, and Johnson & Rogers, of San Antonio, for appellant.

H. D. Barrow and R. R. Smith, both of Jourdanton, for appellee.

MURRAY, Justice.

Appellant, Atascosa County, instituted this suit against the City of Pleasonton, a municipal corporation, seeking to recover the amount of principal and interest alleged to be due upon nine certain warrants alleged to have been issued and delivered to Atascosa County in payment of the old court house and jail buildings and the square of land upon which said buildings are located.

Appellee, City of Pleasanton, answered, alleging that the city did not have good title to said premises and therefore there had been a failure of consideration for the issuance of the warrants, and accordingly there was no liability on the part of the appellee.

The trial judge found that the county did not have title to the square of land, but that it had been dedicated to the public. However, he did find that the appellant had good title to the old court house and jail buildings. He denied a recovery on the warrants, set aside all instruments attempting to convey the land to the city, and decreed the title to the court house and jail buildings to be in the county. From this judgment the county has prosecuted this appeal.

The county seat of Atascosa County was for many years at the City of Pleasanton. In about 1911, by a vote of the people of the county, it was moved to Jourdanton. While a new court house was built at Jourdanton and occupied as the seat of government of the county in 1912, no new jail was built until about 1915. Until that time the old jail at Pleasanton was used as a place to keep county prisoners.

In 1921 negotiations were begun between the City and County for the sale of the old court house and jail to the City of Pleasanton, which culminated in the County executing a quit-claim deed to the old court house and jail property, and the execution by the City of ten warrants in the sum of $500.00 each, payable to the County, as evidence of the consideration agreed to be paid by the City for the property.

It appears from the evidence that prior to 1858 the County Seat of Atascosa County was located at a little place known as Navatasco. Before January 4, 1858, there had been held an election in the County, whereby the county seat had been moved to the Bowen place lying in or about the mouth of the Benito Creek, on the Atascosa Creek. On that date an order was entered in the minutes of the Commissioners' Court declaring that the county seat should be permanently located on the Bowen place;

a committee was appointed to select the place where the town should be laid out; and the county judge was appointed as the county's agent to contract for the erection of a court house twenty feet wide and thirty feet long. The next meeting of the county court, found in the minutes of said county, was held in the court house at Pleasanton on February 15, 1858; the name of Pleasanton having been given to the new county seat, and the new court house having been previously built upon the same piece of land which is in controversy in this suit. The oldest inhabitants of the town, who testified upon the trial, did not know of the court house ever being located in Pleasanton at any other place than that where the old court house building now stands. They knew of no tradition or legend in connection with the history of Pleasanton of a court house ever standing in Pleasanton on any other piece of land than that which is involved in this suit. On September 1, 1858, John Bowen and Henry L. Radaz executed a deed to Atascosa County to all of the odd numbered lots in the town of Pleasanton, according to a plat thereof attached to said deed. The deed contained the following further provision: "We further by these presents convey, set apart and dedicate, to the public use all those parcels of ground in said town not marked as lots but reserved as streets and alleys, and designated upon said plat as such and not numbered but hereafter to be named when the names may be inserted in said plat * * * And the said seat of Justice shall be known and designated by the name of 'Pleasanton'." From an examination of the plat attached to the deed, it is seen that there are many streets and alleys clearly shown on the plat. There is also a square near the center of said plat which is not marked as lots or blocks. It is upon this unmarked, unnumbered and unnamed square that the old court house and jail building stand, and it is this square that is involved in this lawsuit.

It is the contention of appellant that the court house square was first selected and that the town of Pleasanton was laid off around the court house square, and that the unmarked, unnumbered and unnamed square was the place where the court house had already been built, before the deed was executed by Bowen and Radaz to Atascosa County, and that, Pleasanton being laid out for a county seat town, the unmarked square was clearly intended for a court house and jail site. On the other hand, it is the contention of appellee that the leaving of this square unmarked, unnumbered and unnamed manifests a clear intention to dedicate this square as a public square for the general use of the public, and that this dedication was irrevocable. Appellee further contends that this intention to dedicate this square to the public use is further evidenced by a deed executed by Bowen and Radaz to Shook and Dial, conveying certain lots in Pleasanton, in which the square in controversy is referred to as a public square. This deed, however, was executed some eleven years after the deed to the county.

We do not find it necessary to determine whether or not Atascosa County had good title to the land upon which the old court house stands in Pleasanton, the City of Pleasanton accepted a quit-claim deed to this property from the county and executed in payment thereof ten warrants each in the sum of $500.00; thereafter the City secured two extensions for the time of payment of these warrants. There is no allegation on the part of the City of any fraud, accident or mistake in connection with this entire transaction. It therefore becomes apparent that the county did not warrant the title to this property, but sold to the City only a chance for title. The City is in possession of the property, has never been ejected therefrom, and does not contend that there is any threatened danger of eviction. Under such circumstances the City cannot defeat the payment of the warrants issued by it, by setting up a want of title to the property in the county. When a city steps aside from its governmental functions and enters upon the transaction of proprietary matters it is governed by the same rules which govern individuals in such matters. City of Aransas Pass v. Minter, Tex.Civ.App., 21 S.W.2d 384; Brown v. Town of Sebastopol, 153 Cal. 704, 96 P. 363, 19 L.R.A.,N.S., 178.

The City having accepted a quit-claim deed to the court house property cannot in this suit upon the warrants issued by it in payment thereof question the title of its vendor Atascosa County. Hawkins v. Wells, 17 Tex.Civ.App. 360, 43 S.W. 816; Savoy v. Brewton, 3 Tex.Civ.App. 336, 22 S.W. 585; McIntyre v. De Long, 71 Tex. 86, 8 S.W. 622.

In Cooper v. Singleton, 19 Tex. 260, 267, 70 Am.Dec. 333, the Supreme Court said: "The vendee should establish beyond doubt, that the title was a failure in whole or in

**486**

part; that there was danger of eviction, and also such circumstances as would prima facie repel the presumption that at the time of the purchase he knew and intended to run the risk of the defect." See, also, Brown v. Montgomery, 89 Tex. 250, 34 S. W. 443; Wilson v. Moore, Tex.Civ.App., 85 S.W. 25; Medlan v. Abeel, Tex.Civ. App., 47 S.W. 1041.

Accordingly, the judgment of the trial court will be reversed and judgment here rendered that Atascosa County recover of and from the City of Pleasanton the amount of principal and interest due upon the warrants sued upon, and that the county have such other and further relief as may be required to enable it to collect such sums from the City.

Reversed and rendered.

SLATTON, J., being disqualified, did not participate in the decision of this case.