## WIGGINS et al. v. CITY OF TEXARKANA, TEXAS.

No. 6565.

Court of Civil Appeals of Texas. Texarkana.
March 15, 1951.

Rehearing Denied April 26, 1951.

Second Motion for Rehearing Denied
May 24, 1951.

Appeal from District Court, Bowie County; N. L. Dalby, Judge.

Brown & Brown, Texarkana, Texas, for appellants.

Norman C. Russell, John D. Raffaelli, Texarkana, Texas, for appellee.

WILLIAM, Justice.

Appellee, The City of Texarkana, Texas, owner and operator of the only water and sewer system that serves the residents of above city and adjacent areas, enacted an ordinance effective as of August 20, 1950, under which appellee established new and additional rates and charges for water, sewer and other services furnished its customers. Appellee, an incorporated municipality, operated at all times herein mentioned under a special legislative charter granted in 1907, and also under the Home Rule provisions of Title 28 R.C.S. of Texas, Vernon's Ann.Civ.St. art. 961 et seq.

Above ordinance prescribes that "all water furnished to consumers other than industrial and governmental users, without the corporate limits of the City of Texarkana shall be furnished at a rate of 1½ times the rates applying within the city limits." Above ordinance established for the first time a schedule of charges and fees to be paid by residents within the city limits of Texarkana, Texas, for sewer services furnished by appellee, and then prescribes that "all sewer services furnished to customers without the corporate limits of the City of Texarkana, Texas, shall be furnished at a rate double the rate applying within the city limits."

Sec. 6 of above ordinance requires the payment of a tapping charge for all new services to the system within the city limits as follows:

| "Size of Connection | Paved Street | Unpaved Street |
| --- | --- | --- |
| ⅝" | $15.00 | $10.00 |

"The tapping charge shall include up to fifty (50) feet of ¾ inch extension of service, said extension service in no event to extend beyond the property line."

And the next paragraph of Sec. 6 stipulates:

"There shall be charged by the said water and sewer systems a tapping charge for all connections to the water system outside the city limits for residential use covering a ⅝th inch connection and including not more than ten (10) feet of extension of service the sum of $50.00."

Appellants, J. A. Wiggins and numerous others not necessary to name, for themselves and for all other patrons of the water and sewer system similarly situated, all of whom are resident citizens of a certain area adjacent to but outside the corporate limits of the City of Texarkana, Texas, assert that above detailed provisions of the ordinance are against them as a class, discriminatory, excessive, unreasonable and unlawful and prayed for injunctive relief to restrain appellee from exacting from appellants the alleged discriminatory rates and fees above set out, and for a declaratory judgment fixing and determining their rights.

The judgment recites that the court heard sufficient evidence to determine the

case on its merits; that the provisions of the ordinance above set out was valid; denied any injunctive relief; and decreed that plaintiffs take nothing by their suit.

The center of 29th street is the north boundary line of appellee's corporate limits. Appellants are resident citizens of an area between the north boundary line of appellee's corporate limit and 36th Street. This area in which appellants reside is now within the corporate limits of North Texarkana, Texas, which was incorporated in July, 1941, under the General Laws of Texas. The streets which run north and south in both cities are similarly named. The east-west streets are consecutively numbered, beginning with 1st Street in the business section of appellee to 36th Street in North Texarkana.

For a period of more than forty years prior to August, 1948, the American Water Works, a utility corporation, owned and operated under a franchise granted by appellee, the water and sewer system that served the City of Texarkana, Texas; the City of Texarkana, Arkansas; the area now occupied by appellants; and adjacent areas. During this period the system was enlarged from time to time by the construction of new lines or extension of old lines.

During above-mentioned period of time, appellants or their predecessors in title constructed at their own expense water mains and sewerage lines in this area above described. Under an agreement with the American Water Works, Inc., such lines were constructed from time to time and tied in and connected with the service lines in operation within the corporate limits of appellee. In the latter part of this period a large sewer line which now serves a certain area in North Heights, Arkansas, and which line crossed the area within North Texarkana and connects with other sewer lines was constructed by some of the appellants at their own expense under an agreement with the American Water Works.

In August, 1948, appellee purchased from the American Water Works, Inc., all its properties then serving the City of Texarkana and surrounding territory. The properties were purchased with proceeds derived from the sale of revenue bonds previously authorized by the vote of the citizens of Texarkana, Texas, under the provisions of Title 28, R.C.S. of Texas. Under an ordinance enacted by appellee on July 27, 1948, passed in connection with the issuance of the revenue bonds and purchase of the system the rates and fees for service theretofore charged by the American Water Works were to continue and did remain the same until the enactment of the ordinance here attacked.

Art. 1108, R.C.S. of Texas, as amended by the Acts of the 45th Legislature, Vernon's Ann.Civ.St. art. 1108, reads:
"Public Utilities

"Any town or city in this State which has or may be chartered or organized under the general laws of Texas, or by special Act or charter, and which owns or operates waterworks, sewers, gas or electric lights, shall have the power and right:

"1. To own land for such purposes within or without the limits of such town or city.

"2. To purchase, construct and operate water, sewer and gas and electric light systems inside or outside of such towns or city limits, and regulate and control same in a manner to protect the interests of such town or city.

"3. To extend the lines of such systems outside of the limits of such towns or cities and to sell water, sewer, gas, and electric light and power privileges or service to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith under contract with such town or city under such terms and conditions as may appear to be for the best interest of such town or city; provided that no electric lines shall, for the purposes stated in this section, be extended into the corporate limits of another incorporated town or city.

"4. To prescribe the kind of water or gas mains or sewer pipes and electric appliances within or beyond the limits of such town or city, and to inspect the same and require them to be kept in good order and condition at all times and to make such

rules and regulations and prescribe penalties concerning same, as shall be necessary and proper."

Under the sole counter-point presented, it is appellee's contention that under the provisions of art. 1108, supra, "Appellee is under no legal duty to furnish water and sewage disposal service to these non-resident appellants. Further, if such is furnished, appellee is under no legal duty to furnish such on same basis that the services are furnished to residents of the City of Texarkana, Texas, but appellee may permit the use of such services under terms and conditions as may appear to be to the best interest of the City of Texarkana."

The numerous authorities cited by appellee in an able brief to sustain the action of the trial court, although well respected, do not under this record control the disposition of the issue presented.

Appellee purchased this system with the proceeds realized from the issuance and sale of revenue bonds as authorized under Title 28, R.C.S. of Texas. Art. 1118a of this title provides "no such obligation shall ever be a debt of such city * * *, but solely a charge upon the properties so encumbered and shall never be reckoned in determining the power of such city or town to issue any bonds for any purpose authorized by law." Sec. 4 of art. 1118a provides that "Every contract, bond or note issued or executed under this law shall contain this clause; 'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation.'" Hence the element of a levy and collection of taxes upon properties of resident citizens in the acquisition, improvement or operation of a system as involved in the authorities cited by appellee are not present here. In fact, these non-resident customers will assist in appellee's payment and retirement of the revenue bonds, a benefit to appellee.

■ In the acquisition and operation of this water and sewerage system for profit, appellee acts in a proprietary capacity. And as stated in 62 C.J.S., Municipal Corporations, § 110, p. 247, "is governed by the same rules, and is held to the same standard of just dealing, that the law prescribed for private individuals or corporations, * * * unless restricted by its charter or general law." And when so engaged appellee is "subject to the same rules and duties as govern and devolve upon a private corporation, co-partnership or an individual engaged in such business." City of Wichita Falls v. Lipscomb, Tex.Civ. App., 50 S.W.2d 867, 871. See also Atascosa County v. City of Pleasanton, Tex.Civ. App., 117 S.W.2d 484.

■ As stated in City of Montgomery v. Greene, 180 Ala. 322, 60 So. 900, 902, and applicable to this record: "It may be that the act of 1891 left it optional with the city as to whether or not it would attempt to supply water beyond its corporate limits to points within its police jurisdiction, but, when it attempts to do so, it must be with uniformity, and without discrimination; and, if the citizens of Cloverdale are on its mains, they should be given the same uniform rate as is the general rate for others along or upon its mains, and a different rate, fixed wholly upon the corporate lines as the line of demarcation, in the absence of physical differences, is an unreasonable classification. This rule applies to municipalities operating their own water system, as well as to individuals or corporations who undertake to supply water or lights."

In Dallas Power & Light Co. v. Carrington, Tex.Civ.App., 245 S.W. 1046, 1049, which involved substantially the same issue as here, the court denied the efforts of the appellant, a private utility corporation holding a franchise from the City of Dallas, to charge the citizens of Highland Park, also a municipal corporation, a higher rate for the same services. In support of such holding, the court in approval of the holding in Montgomery v. Greene, supra, states: "the court held that the water rate charged by the city of Montgomery to the citizens of Cloverdale higher than that charged the citizens of Montgomery, on the theory that Cloverdale was a separate municipality, was discriminating. A number of cases to the same effect are cited in the opinion of the court in the case last quoted." And concluded, 245 S.W. at page 1050: " * * *

a division of territory served by a single plant into units or zones based on municipal lines, rather than on actual physical conditions and situation, is, we think, improper as a basis upon which to fix a rate."

Other than the non-residency of appellants which is uncontroverted, appellee offered no evidence and this record is entirely absent of any physical or economic factor which will support the readily apparent discriminatory rates and charges here under attack. The sufficiency of the water supply to adequately serve all the needs within the corporate limits and adjacent areas in Texas and Texarkana, Arkansas, were not questioned. All the streets in the area involved are unpaved, and from an economic basis the tapping fees in the area involved should not exceed those charged on an unpaved street within the corporate limits. The sewer disposal plant is located south of and beyond the corporate limits of appellee. Its main source of water supply and pumping unit situated Northwest of the corporate limits are in closer proximity to the area in which appellants reside than a major portion of the corporate limits of appellee. This would not suggest a higher expense in delivering water to appellants. For the reasons stated, the judgment of the trial court will be reversed and the cause remanded.

It is possible, and even probable, that the terms of the purchase contract under which appellee acquired the system; the contracts, if any then outstanding, between its predecessor in title and patrons of the system; and the terms of contracts under which appellee may be furnishing its service to the City of Texarkana, Arkansas, would be pertinent to the economic and physical factors to be considered in the establishment of the rates for the area here involved. The evidence offered by appellants deals in a general way with appellee's operation of the system under above contracts. In the event of another trial, it is recommended that the terms of above contracts and any prior agreements had with the people in the area involved be more fully developed to further aid an appellate court in a review of the matter here complained of.

The judgment of the trial court is reversed and the cause remanded.

On Motion For Rehearing

If Sec. 3 of Article 1108, supra, be not referable to acts in futuro, as the terms "to extend" and "permit" so used in this section would suggest this court does not feel warranted in invoking the provisions of such section to vitiate an implied contract of many years duration which had existed between appellee and appellee's predecessor in title and appellants and their predecessors in title. Under this record, appellee has engaged in a business enterprise for profit. We are unable to advance any reasons why the same principles which are advanced in above cited cases are inapplicable to the instant record. Appellee's motion for rehearing is overruled. Appellant's motion on rehearing for a reversal and rendition is also overruled.